1

Honorable James L. Robart

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**
9           **WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

10   RICHARD DWYER,                    )        **NO.  2:20-cv-01236-JLR-MAT**
                                       )
11        Plaintiff,                   )        **PLAINTIFF'S RESPONSE**
                                       )        **TO DEFENDANT'S**
12        v.                           )        **MOTION TO DISMISS**
                                       )
13   TRINITY FINANCIAL SERVICES, LLC,  )        **Note on Motion Calendar:**
                                       )
14        Defendant.                   )        **Friday, March 12, 2021**
                                       )
15   _____ )        **Oral Argument Requested**

16        Plaintiff RICHARD DWYER, through his attorney RICHARD L. POPE, JR., presents

17   this response to Defendant Trinity Financial Services, Inc.'s Motion to Dismiss (dkt. 24).

18                **MOTION FOR EXTENSION OF TIME (separately noted)**

19        Plaintiff has filed a separate motion for extension of time (dkt. 25) and maintains that

20   motion.  Plaintiff will seek leave of court under Rule 15 F.R.Civ.P. to file an amended complaint

21   to more fully set forth his case and add additional claims in the very near future in any event.

22               **RELIEF REQUESTED ON DEFENDANT'S MOTION**

23        1.    All of Defendant's motion to be dismissed should be denied, except for dismissal

24   of Plaintiff's Sixth Claim for Relief under RCW 19.148.030(2).  If an amended complaint is

25   permitted, Plaintiff will not include any claims related to RCW 19.148.030(2).

26        2.    Plaintiff should be permitted to file an amended complaint to add additional claims

27   for relief and to resolve any pleading deficiency issues in Plaintiff's state court filed complaint.

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 1

3.      Defendant has not identified any contractual provisions that would allow recovery of attorney fees against Plaintiff for an unsuccessful lawsuit related to the claims in this lawsuit.

4.      There is no bad faith by Plaintiff which would permit recovery of attorney fees in the event that Plaintiff's FDCPA claims were dismissed by the Court.

5.      Plaintiff objects to consideration of the purported August 13, 2015 letter presented by Defendant at dkt. 24-2.  At best, this letter, if believed true, might offer Defendant a factual defense.  Plaintiff never received this letter and believes the same to be a recent creation.

6.      Plaintiff notes that Defendant's rights (if any) to receive the mortgage loan payments being disputed by Plaintiff would be a compulsory counterclaim that has not, to date, been asserted by Defendant as required by Rule 13(a)(1) F.R.Civ.P. and that outright dismissal would operate a res judicata to prevent Defendant from collecting anything on the loan at issue.

**Standard for Determining Rule 12(c) Motions for Judgment on the Pleadings**

A motion for judgment on the pleadings under Rule 12(c) F.R.Civ.P. or a motion to dismiss for failure to state a claim under Rule 12(b) F.R.Civ.P. are judged on the same legal basis.  Such a motion should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  Conley v. Gibson, 355 U.S. 41 (1957); California Dump Truck Owners Ass'n v. Associated General Contractors, 562 F.2d 607 (9th Cir. 1977).  When considering a motion to dismiss for failure to state a claim, the court must take factual allegations of the complaint as true and resolve any ambiguities or doubts regarding sufficiency of claim in favor of plaintiff.  Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278 (5th Cir. 1993).

Since this case was originally started by Plaintiff in King County Superior Court, sufficiency of the complaint should be judged by Wash. CR 12(b)(6) (analogous to its federal counterpart) and state case law – and if not, Plaintiff should be given leave to amend.  "Federal cases are of interest but not binding".  Orwick v. City of Seattle, 103 Wn.2d 249, 256, 692 P.2d 793 (1984).

In Orwick, the Washington Supreme Court upheld an extremely poorly drafted complaint against a CR 12(b)(6) motion, even though "[T]he legal basis for [plaintiff's] claim [was] neither

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 2

1  clear from the pleadings, nor [was] it adequately developed in the briefs."  103 Wn.2d at 254.  CR

2  12(b)(6) motions are granted only "sparingly and with care":

3        Dismissal for failure to state a claim may be granted only if "it appears beyond
       doubt that the plaintiff can prove no set of facts, consistent with the complaint, which
4        would entitle the plaintiff to relief"....  [citation omitted]

5        As to the facts, the complaint survives a CR 12(b)(6) motion if any state of
       facts could exist under which the claim could be sustained....  [citation omitted]
6        (emphasis in original)

7  Orwick, 103 Wn.2d at 254-55.

8        Defendant chose to remove this action to federal court.  Upon removal, Defendant had the

9  option of testing the sufficiency of Plaintiff's complaint under the federal pleading standards by

10 filing a Rule 12(b)(6) motion.  Defendant chose not to, and instead answered the complaint.

11 Plaintiff should be allowed the opportunity to amend his complaint from the more lenient state law

12 standards, to the higher standard of specificity of pleading required under federal case law, now that

13 Defendant has finally filed a motion challenging pleading sufficiency.  Plaintiff will in any event be

14 asking permission shortly to file an amended complaint, as previously noted.

15                  **Objection to Purported August 13, 2015 Letter at Dkt. 24-2**

16       Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to

17 the contents of the complaint. *See* Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1141 n. 5

18 (9th Cir. 2003).  A court may consider evidence on which the complaint "necessarily relies" if: (1)

19 the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no

20 party questions the authenticity of the copy attached to the 12(b)(6) motion. *See* Branch v. Tunnell,

21 14 F.3d 449, 453-54 (9th Cir.1994), *overruled on other grounds* by Galbraith v. County of Santa

22 Clara, 307 F.3d 1119 (9th Cir.2002); *see also* Warren, 328 F.3d at 1141 n. 5, Chambers v. Time

23 Warner, Inc., 282 F.3d 147, 153 n. 3 (2d Cir.2002). The court may treat such a document as "part of

24 the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss

25 under Rule 12(b)(6)." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.2003).

26        Defendant has offered a purported August 13, 2015 letter, that Defendant claims to have

27 sent Plaintiff notifying that servicing of the loan was transferred from Dreambuilder Investments

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 3

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

1  LLC to Defendant. (dkt. 24-2)  This letter is NOT referred to in Plaintiff's complaint, which

2  instead states that Plaintiff received no notice whatsoever from anyone related to the second

3  mortgage loan from before February 28, 2008, when Plaintiff filed a bankruptcy, until April 8,

4  2020, when Defendant sent a letter to Plaintiff.  (Complaint, ¶¶ 8-10)  Instead of referring to the

5  purported August 13, 2015 letter, the Complaint disputes its very existence.  While the letter

6  might be relevant to Defendant's defense, it is obviously in no way part of Plaintiff's claims.

7      Plaintiff also believes the purported August 13, 2015 letter to be a recent fabrication, with

8  Defendant attempting to falsely say Plaintiff was given notice it was a loan servicer.  Defendant

9  did not a Consumer Loan Company License from Washington until January 10, 2018 – legally

10  required in order to service a residential mortgage loan (regardless of whether a company

11  services loans that they own or services loans that others own) under RCW 31.04.035(1).

12  Violation of this law, in addition to being a crime under RCW 31.04.175(1), is also a violation of

13  the Washington Consumer Protection Act under RCW 31.04.208, which provides for money

14  damages and other civil relief.  (The prior alleged servicer, Dreambuilder, has never had a loan

15  servicing license in Washington.)  The fact that neither Defendant nor Dreambuilder had any

16  license to service loans in 2015 makes it less likely they would have notified Plaintiff that either

17  was a loan servicer.  Silence about servicing and transfer of servicing is consistent with the total

18  lack of communication for over 12 years about the loan.  In any event, Plaintiff need merely

19  deny the veracity of the alleged letter to prevent its consideration on a Rule 12(c) motion.

20      **Summary of Main Relevant Facts Pertaining to Claims**

21      The following are taken from the main statement of facts in Plaintiff's Complaint and all

22  must be assumed to be true for the purposes of a Rule 12(c) motion.  There are additional facts in

23  various sections of the individual causes of action set forth in Plaintiff's complaint, and there are

24  additional facts, consistent with Plaintiff's complaint, which can support Plaintiff's complaint.

25      4.   Plaintiff owns a home he where he resides in King County, Washington at the

26  street address of 25322 113th Ave SE, Kent, Washington 98030 and the legal description of:

27

28  PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 4

LOT I, CITY OF KENT SHORT PLAT NO. SP 90-19 RECORDED UNDER
RECORDING NO. 9102140575, BEING A PORTION OF THE SOUTHEAST
QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHEAST
QUARTER OF THE SOUTHEAST QUARTER OF SECTION 20, TOWNSHIP
22 NORTH, RANGE 5 EAST, W.M., IN KING COUNTY, WASHINGTON.
SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON. (Assessor
Tax Parcel No. 202205-9071)

5.     On July 12, 2006, Plaintiff executed two deeds of trust on his home in favor of

Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary.  In reality, MERS was

"nominee" under these deeds of a trust for Ownit Mortgage Solutions, Inc., who was intended to

be the true beneficial owner under these deeds of trust.  There was a first position deed of trust in

the amount of $209,600.00 recorded under King County Recording No. 20060717000986 and a

second position deed of trust in the amount of $52,400.00 recorded under King County

Recording No. 20060717000987.  Both of these documents were recorded on July 17, 2006.

6.     Plaintiff paid no more than a few payments on the second position deed of trust,

reducing the principal balance to $52,396.20.  Plaintiff has not made any payments on the second

position deed of trust since some time prior to December 31, 2006.

7.     Shortly after Plaintiff executed the second position deed of trust, Ownit Mortgage

Solutions, Inc. transferred beneficial interest in the same to Greystone Solutions, Inc.  In turn,

Greystone Solutions, Inc., gave notice to Plaintiff that it now owned the second position deed of

trust.  No recordings were filed in connection with this change of ownership with the King

County Recorder's Office, with MERS remaining as legal beneficiary in the public records.

8.     On February 28, 2008, Plaintiff filed a Chapter 13 bankruptcy in the United States

Bankruptcy Court for the Western District of Washington at Seattle, No. 08-11106-KAO.

Plaintiff's main objective was to keep his home and to avoid loss through foreclosure.  This

Chapter 13 bankruptcy was dismissed without plan confirmation on January 30, 2009.

9.     Greystone Solutions, Inc. was listed as a secured creditor on Plaintiff's 2008

Chapter 13 bankruptcy, and was given notice of the bankruptcy filing at both a Buffalo, New

York street address and a Medford, Massachusetts post office box address.  Greystone Solutions,

Inc. did not file a proof of claim or otherwise communicate regarding Plaintiff's bankruptcy.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 5

10.     Plaintiff did not hear anything further from Greystone Solutions, Inc. or anyone else claiming to hold any interest in the second position deed of trust until April 8, 2020, when Defendant mailed a letter and other materials claiming to own the second position deed of trust.

11.     On April 27, 2017, Plaintiff filed a Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Washington at Seattle, No. 17-11970-CMA. Plaintiff's main objective was to keep his home and to avoid loss through foreclosure.  There was a pending foreclosure action on the first position deed of trust, which by that time was being serviced by Select Portfolio Servicing.

12.     By the time of the April 27, 2017 Chapter 13 bankruptcy filing, Plaintiff had not heard anything from Greystone Solutions, Inc. or anyone else claiming an interest in the second position deed of trust since prior to the February 28, 2008 Chapter 13 bankruptcy filing.  Plaintiff assumed that Greystone Solutions, Inc.  or whoever claimed an interest had abandoned all hope of ever collecting anything and that the holder of the second position deed of trust had decided the obligation was barred by the statute of limitations and was no longer legally enforceable. Plaintiff did not list Greystone Solutions, Inc. or anyone else on the 2017 bankruptcy filing, due to the large passage of time and the lack of actual knowledge of the second deed of trust holder.

13.     When Plaintiff filed the 2017 Chapter 13 bankruptcy, there was a total of about $366,567.00 owed on the first position deed of trust, with the fair market value of his home being about $303,000.00.  Even without consideration of the second position deed of trust, the debt on the first position deed of trust exceeded the fair market value of the property by over $60,000.00.  In spite of the property being significantly upside down, even with consideration of just the first position deed of trust, Plaintiff placed considerable value on being able to own and keep his home, and was willing to rehabilitate and pay down the first deed of trust to do this.

14.     By contrast, had the holder of the second position deed of trust been currently asserting any secured interest at the time of the 2017 Chapter 13 bankruptcy, Plaintiff would not have been willing to also pay off the second deed of trust in order to save and keep his home – especially since debt would have exceeded value by considerably more than $100,000.00.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 6

15.      In addition, had the holder of the second position deed of trust been currently asserting any secured interest at the time of the 2017 Chapter 13 bankruptcy, Plaintiff would have been able to completely eliminate any security interest of the second deed of trust in an adversary proceeding that could have been filed in conjunction with the bankruptcy case.  The second position deed of trust was fully unsecured in economic terms, since the first position deed of trust fully encumbered the fair market value of Plaintiff's home.  Since there was no actual economic position in the home securing the second position deed of trust, its legal secured interest in Plaintiff's home could have been eliminated through an adversary proceeding.

16.      Plaintiff made considerable economic payments through the 2017 Chapter 13 bankruptcy case, in reliance upon no claim being asserted by any purported holder of the second position deed of trust.  Plaintiff paid $2,000.00 in an advance payment for his attorney fees, $310.00 payment for the filing fee, and $53,596.00 in Chapter 13 plan payments through the Chapter 13 Bankruptcy Trustee.  Of this $53,596.00 in Chapter 13 plan payments, $1,500.00 went for the balance of Plaintiff's attorney fees, $4,534.19 for Chapter 13 trustee administrative costs, and $49,061.81 in disbursements to creditors.  Of these creditor disbursements, $25,544.19 went towards current payments on the first position deed of trust and another $5,110.49 towards arrearages on the first position deed of trust.  As a result of both the reduction in the amount owed on the first position deed of trust and appreciation of the value of Plaintiff's home during the 2017 Chapter 13 bankruptcy (which was dismissed on January 10, 2019), the interests of the first position deed of trust holder in Plaintiff's home were considerably improved.  Moreover, if costs of sale were not considered, there may be some fair market value in the Plaintiff's home at July 2020 values, that would be applicable to a second position deed of trust, even though a foreclosure sale (or even regular sale) would net nothing for the second position whatsoever.

17.      On August 1, 2016, MERS executed an assignment of the second position deed of trust to Defendant.  This assignment was recorded by Defendant with King County Records on August 24, 2016 under recording number 20160824001578.  Defendant did not provide any notice to this assignment to Plaintiff until a letter and other materials were mailed April 8, 2020.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 7

18.     Defendant registered with the Washington Secretary of State as a foreign LLC on October 9, 2014.  Defendant obtained an Out-of-State Collection Agency license from the Washington Department of Licensing on December 22, 2014.

19.     Under the amendments enacted by Laws 2013, Chapter 148, Section 1, which became effective on October 1, 2013 and are currently found at RCW 19.16.110(4)(d), "any person or entity that is engaged in the business of purchasing delinquent or charged off claims for collection purposes, whether it collects the claims itself or hires a third party for collection or an attorney for litigation in order to collect such claims" must have a collection agency license.

20.     Defendant has purchased at least 50 delinquent second position deeds of trust in King County since 2013 (at least 10 of which were purchased while Defendant did not have the required collection agency license) and probably around 150 to 200 such delinquent second position deeds of trust in all of Washington during the same time period.

21.     Defendant's license as an Out-of-State Collection Agency pursuant to RCW 19.16.100(11) would allow Defendant to solely "collect[] debts from debtors located in this state by means of interstate communications, including telephone, mail, or facsimile transmission, from [Defendant's] location in another state".  This would allow Defendant to send letters, telephone calls and e-mails to Washington homeowners urging them to pay the delinquent loans they had purchased, but would prohibit activities physically taking place in Washington, such as filing collection lawsuits or foreclosure lawsuits or having trustee foreclosure sales conducted.

22.     According to a search of court records and property records in King County, there have been no lawsuits filed by Defendant or attempts to conduct any trustee foreclosure sale.  Based on this lack of action in King County and presumed lack of similar action elsewhere in Washington, Defendant does not actually intend to file any lawsuit or conduct any foreclosures.

23.     The letter Defendant mailed Plaintiff on April 8, 2020 stated that Defendant had a valid security interest in Plaintiff's home that could be enforced by foreclosure against the property.  Defendant requested Plaintiff make contact to negotiate payment arrangements with Defendant of this alleged security interest and provide Defendant personal financial information.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 8

1     **<u>Statute of Limitations Claim is Valid for At Least Some Installments, if Not Entire Loan</u>**

2          The second mortgage deed of trust loan is an installment note contract dated July 11,

3 2006, which calls for 360 installments of principal and interest starting on September 1, 2006

4 and ending on August 1, 2006.  (dkt. 24-1 at 2)  Plaintiff, at most, paid the September 1, 2006

5 installment.  All installments due before March 8, 2015 are now time-barred, at the minimum.[1]

6          A deed of trust with monthly loan payments is a written installment contract.  Written

7 contracts are subject to a six-year limitations period in Washington. See RCW 4.16.040(1). For

8 installment contracts, each installment triggers the limitations period for that missed payment:

9 "[W]hen recovery is sought on an obligation payable by installments[,] the statute of

10 limitations runs against each installment from the time it becomes due; that is, from the time

11 when an action might be brought to recover it." <u>Herzog v. Herzog</u>, 23 Wn.2d 382, 388, 161 P.2d

12 142, 144-45 (1945); *see also* 25 David K. Dewolf, Keller W. Allen & Darlene Barrier Caruso,

13 <u>Washington Practice: Contract Law and Practice § 16:20</u>, at 196 (2012-13 Supp.) ("Where a

14 contract calls for payment of an obligation by installments, the statute of limitations begins to

15 run for each installment at the time such payment is due.").  *see also* <u>Jarvis v. Fed. Nat'l Mortg.</u>

16 <u>Ass'n</u>, Case No. C16-5194-RBL (W.D. Wa. 04/24/2017)

17          As Defendant concedes, if the facts show that a prior holder of the second mortgage made

18 an acceleration demand or wrote off the loan more than six years ago, the entire amount due on

19 the deed of trust would be time barred.  For purposes of a Rule 12(c) motion, these hypothetical

20 facts must be assumed to exist and would bar dismissal at the pleading stage.

21          But even absent acceleration or write off more than six years ago, all monthly installments

22 that were due more than six years ago (everything due before March 8, 2015) is now time barred.

23 Frankly, even on a Rule 56 motion, Defendant would not be able to avoid summary judgment in

24 Plaintiff's favor time barring these long past due installments.  Certainly, Plaintiff's Complaint

25 on statute of limitations must survive the very low bar of a Rule 12(c) motion in any event.

---

26        [1]       Defendant has not counterclaimed on the promissory note at issue in this litigation.  If such a counterclaim were made in this action, it might relate back to the August 2, 2020 initiation of this lawsuit by service

27 in state court.  Since no counterclaim has been interposed to date, the statute of limitations clock keeps running.

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 9

1

## Plaintiff's Claim for Laches is Also Valid

2      As a preliminary matter, Defendant incorrectly asserts that the ONLY way Plaintiff may

3  obtain a quiet title judgment under Washington law is RCW 7.28.300, relating to a "mortgage or

4  deed of trust would be barred by the statute of limitations".  Defendant's position is incorrect.

5      The general statute for quieting title in Washington is RCW 7.28.010, which provides the

6  basis for anyone claiming an interest in real property to quiet the alleged interests of anyone

7  asserted not to have a valid interest:  **"Any person having a valid subsisting interest in real**

8  **property, and a right to the possession thereof**, may recover the same by action in the superior

9  court of the proper county, to be brought against the tenant in possession; if there is no such

10  tenant, then against the person claiming the title or some interest therein, and **may have**

11  **judgment in such action quieting or removing a cloud from plaintiff's title**".  Quiet title is an

12  action developed in equity, and can be used to quiet title not only on specific legal theories, but

13  also on equitable theories.  Finch v. Matthews, 74 Wn.2d 161, 443 P.2d 833 (1968).

14      Laches is an equitable defense based on estoppel.  A debtor asserting the doctrine of

15  laches must affirmatively establish:  (1) knowledge by the creditor of facts constituting a cause

16  of action or a reasonable opportunity to discover such facts, (2) unreasonable delay by the

17  creditor in commencing the action; and (3) damage to the debtor resulting from the delay in

18  bringing the action. Hayden v. Port Townsend, 93 Wn.2d 870, 874-75 (1980). Laches is

19  equitable in nature, it is an "extraordinary" defense, and the party asserting laches must prove the

20  defense by clear and convincing evidence. Ward v. Richards & Rossano, P.S., 51 Wn. App. 423,

21  435 (1988); Brost v. L.A.N.D., Inc., 37 Wn. App. 372, 375-76 (1984); Arnold v. Melani, 75

22  Wn.2d 143, 148 (1968).

23      Defendant cites no authority supporting its theory that Plaintiff must wait for Defendant to

24  actually threaten foreclosure, before asserting laches.  Such proposition is absurd – if the facts

25  exist now, a property owner should be able to assert them now, rather than wait for years or

26  perhaps for(n)ever for a mortgage holder to foreclose.  To have to wait makes claims get stale

27  before being adjudicated, and prevents property titles from being timely resolved judicially.

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 10

**Lake Hills Legal Services PC**
**15600 N.E. 8ᵗʰ St., # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

1    In any event, on November 12, 2020, Defendant engaged a law firm (Wright Finlay &

2    Zak) to send a letter to Plaintiff declaring him in default on the loan, specifically demanding

3    Plaintiff send $39,096.01 in payment of the alleged arrearages, claiming that the total payoff of

4    the loan was nearly $40,000 more than the principal balance, stating that legal action or

5    foreclosure may be commenced against Plaintiff, and stating that Plaintiff had the right to sue

6    Defendant to assert any defense against the loan or deed of trust. (Exhibit 2)

7    While these above facts are not currently in the complaint, Plaintiff will be seeking to file

8    an amended complaint asserted these facts – which will clearly make a laches defense ripe even

9    under Defendant's theories.  And if laches is somehow premature at this point, any dismissal

10   would have to be without prejudice to Plaintiff being able to assert laches when it becomes ripe.

11   The remainder of Defendant's argument is an attempt to win a summary judgment type

12   standard, without having the Court evaluate any facts – just Defendant's limited presentation of a

13   few alleged facts that Defendant believes to be relevant.  That is not the Rule 12(c) standard.

14   Plaintiff's laches argument is not based solely on Defendant's (and its predecessors in

15   interest) failure to foreclose on the property, but on Defendant's (and predecessors) complete

16   silence about the second mortgage for over 12 years.  From Plaintiff's Complaint:

> 100.    Defendant and its predecessors in interest have been aware since
> July 2006 (typo of 2016 in Complaint) of their rights under the second position
> deed of trust, aware of Plaintiff's non-payment of the same starting in about
> August or September of 2006, have delayed unreasonably in bringing any action to
> enforce the second position deed of trust and associated promissory note
> (including failure to take any foreclosure action and/or litigation, failure to file a
> proof of claim in the 2008 Chapter 13 bankruptcy, failure to notify Plaintiff of
> change of ownership and change of servicing in connection with the August 2016
> ownership and servicing transfer and any prior transfers of ownership and
> servicing, and failure to provide Plaintiff with any periodic billing statements since
> at least 2008 to the present time, and Plaintiff would be damaged if Defendant is
> allowed to assert a valid security interest and/or personal obligation.  Enforcement
> should therefore be barred under the doctrine of laches.

24   Plaintiff believes all these delays, taken together, are objectively unreasonable – even

25   more so given requirements under federal law to send periodic billing statements, and to notify

26   about changes in servicing and ownership.  Even if 14 years of nonenforcement by itself was not

27   unreasonable delay, over 12 years of complete silence – contrary to law – was not reasonable.

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 11

1   Plaintiff has also alleged specific damages as a result of this delay.  Complaint, ¶¶ 12-16.

2   Plaintiff filed his 2017 Chapter 13 to avoid foreclosure on the first mortgage.  At the time,

3   Plaintiff's home was "underwater" on the first mortgage, and the second mortgage could have

4   been avoided in a Chapter 13 plan.  Plaintiff did not think about or list the second mortgage,

5   since he had heard nothing at all from anyone since 2008, and had been lulled into not even

6   thinking about it anymore.  Plaintiff spent over $56,000 in Chapter 13 and other payments in the

7   bankruptcy, the vast majority of which went to the first mortgage, or trustee and related fees.

8   Had Defendant actively asserted its interests by even sending Plaintiff periodic statements, then

9   Plaintiff would have known to avoid the fully underwater second mortgage, been motivated to do

10  so[2], and wiped out the second mortgage on successful Plan completion.  In the alternative,

11  Plaintiff would not have paid over $56,000 in the Chapter 13, just to improve the position of the

12  second mortgage holder from being fully unsecured to perhaps attaching to some small equity.

13                    **Plaintiff's Waiver Claim is Valid**

14   Waiver is "the intentional and voluntary relinquishment of a known right".   Jones v.

15  Best, 134 Wn.2d 232, 241-42, 950 P.2d 1 (1998).  Defendant and its predecessors in interest

16  have known about the rights created by the second position deed of trust and associated

17  promissory note since their creation in July 2006.  Defendant and its predecessors in interest

18  have intentionally relinquished these known rights by failure to take any foreclosure action

19  and/or litigation, failure to file a proof of claim in the 2008 Chapter 13 bankruptcy, failure to

20  notify Plaintiff of change of ownership and change of servicing in connection with the August

21  2016 ownership and servicing transfer and any prior transfers of ownership and servicing, and

22  failure to provide Plaintiff with any periodic billing statements since at least 2008 to the present

23  time.  Enforcement should therefore be barred under the doctrine of waiver.

24   Defendant's waiver arguments fail to address the vast majority of the above assertions.

25

26       [2]  There may be other reasons for the 2017 bankruptcy being dismissed, which was done for lack of making
    payments.  Plaintiff would assert in an amended complaint that arrangements were made with the first mortgage
27   holder to stave off foreclosure, at least for a while.  A different scenario would have presented itself, if there were a
    confirmed Chapter 13 Plan that would have wiped out the fully underwater second mortgage on plan completion.

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 12

1    It is especially notable that Defendant (and its predecessors) have intentionally waived

2  their right to nearly half of the periodic payments on the second mortgage:  (1) All payments due

3  from September 1, 2006 to March 1, 2015 are now barred by the statute of limitations, and (2) at

4  the minimum, all payments through March 1, 2021 are barred by failure to file a compulsory

5  counterclaim under Rule 13(a)(a) F.R.Civ.P. for at least the matured past due installment

6  payments on the loan.  Plaintiff would argue that Defendant's waiver extends to the entire loan.

7    There was total silence from Defendant (and its predecessors) for at least 12 years, with

8  no communications or even requests to pay anything on the loan, despite federal and state laws

9  clearly requiring monthly servicing statements.  In addition to absolutely barring collection of a

10  major portion of loan installments by the statute of limitations, Plaintiff would argue that a trier

11  of fact could conclude under appropriate facts a waiver of ALL rights to collect under the loan.

12    Just as argued under laches, RCW 7.28.010 generally covers all quiet title actions,

13  Defendant is currently asking to collect and threatening to foreclose, there is no requirement of

14  "ripeness", this matter is "ripe" if that is required, and any prematurity does not bar future claim.

15    **Fair Debt Collection Practices Act Claim is Valid**

16    As a preliminary matter, Plaintiff's state court complaint does not go into many factual

17  and legal detail about why Defendant is a "debt collector" under the Fair Debt Collection

18  Practices Act.  Any deficiencies in this arena will be addressed through an amended complaint.

19    In general, Plaintiff believes that a principal purpose of Defendant's business is the

20  collection of debts.  Plaintiff also believes that Defendant is collecting for the benefit of persons

21  other than itself.  While the August 2015 letter in dkt. 24-2 was never sent to Plaintiff, it shows

22  the true owner of the mortgage loan to be Dreambuilder Investments LLC.  Dreambuilder never

23  acquired a Washington collection agency license required to purchase delinquent debt, and

24  therefore transferred nominal ownership to Defendant, who does have a Washington license.

25  Plaintiff believes beneficial interest belongs to Dreambuilder or another "investor".  Moreover,

26  Defendant has admitted to being a "debt collector" under the FDCPA in its correspondence to

27  Plaintiff. (Exhibit 1, October 26, 2020 letter; Exhibit 3, August 8, 2020 letter)

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 13

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

Defendant misquotes 15 USC 1692a(6), the statutory definition of "debt collector" on Page 12, Lines 2-3 of its Motion to Dismiss.  The actual "debt collector" definition in 15 USC 1692a(6) is:  *The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails [A] in any business the principal purpose of which is the collection of any debts, or [B] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.* (brackets added)

Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1724 (2017) addressed a very limited application of the FDCPA – whether an entity that ONLY tried to collect delinquent debt it had purchased for its own account – and nothing more – could qualify as a "debt collector" under the second alternative part of the 15 USC 1692a(6) definition, i.e. "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another".  And Henson held that an entity who only tried to collect debt that it had purchased for itself, and did nothing else whatsoever, did not qualify as a FDCPA "debt collector". *Id.*

By contrast, Henson held that someone collecting debt, even nominally under their own name, whose true beneficial interest belonged to another creditor, was a "debt collector".  136 S.Ct. at 1723.  And Henson did not address the first alternative test of 15 USC 1692a(6), i.e. an entity "*in any business the principal purpose of which is the collection of any debts*", or whether an entity regularly collecting debt owed to others is covered as a "debt collector" when they are attempting to collect debt that they have truly purchased for their own account:

> Before attending to that job, though, we pause to note two related questions we do not attempt to answer today. First, petitioners suggest that Santander can qualify as a debt collector not only because it regularly seeks to collect for its own account debts that it has purchased, but also because it regularly acts as a third party collection agent for debts owed to others. Petitioners did not, however, raise the latter theory in their petition for certiorari and neither did we agree to review it. Second, the parties briefly allude to another statutory definition of the term " debt collector" --one that encompasses those engaged " in any business the principal purpose of which is the collection of any debts." § 1692a(6). But the parties haven't much litigated that alternative definition and in granting certiorari we didn't agree to address it either.

Henson, 136 S.Ct. at 1721.  Not surprisingly, Defendant's briefing is totally devoid of any analysis of these other alternatives – all of which are (or will be) expressly pleaded by Plaintiff.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 14

1    What other legal analysis Defendant offers is completely irrelevant to the FDCPA issues

2    presented in this lawsuit.  Niborg v. CitiMortgage, Inc., No. C17-5155 BHS, 2017 U.S. Dist.

3    LEXIS 110657, at *6 (W.D. Wash. July 17, 2017) Kislyanka v. Clear Recon Corp., No.

4    C19-0673RSL, 2019 U.S. Dist. LEXIS 171238, at *9 (W.D. Wash. Oct. 1, 2019) are both

5    mortgage foreclosure cases – Niborg doesn't appear to involve the FDCPA at all and Kislyanka

6    holds that mortgage foreclosure by a trustee does not generally implicate the FDCPA.

7    In the present case, Plaintiff contends that Defendant is covered as a "debt collector"

8    under 15 USC 1692a(6) by several alternative bases, each of which is independently valid under

9    Henson:  (1) the true beneficial owner of the mortgage loan is Dreambuilder or another investor

10   client of Defendant, (2) even if Defendant is now the true owner, Defendant only bought the debt

11   after it started collecting it, (3) even if Defendant is the true owner, Defendant regularly collects

12   debts for others, (4) the principal purpose of Defendant's business is the collection of debts,

13   and/or (5) Defendant has expressly admitted that it is a "debt collector".

14   Notably, the Ninth Circuit has joined other circuits in expressly limiting Henson to the

15   very narrow set of facts considered on the certiorari petition.  In McAdory v. M.N.S. & Assocs.,

16   LLC, 952 F.3d 1089, 1095 (9th Cir. 2020), the Ninth Circuit held an entity whose principal

17   business is collecting debts is covered as a "debt collector" under the first prong of 15 USC

18   1692a(6), even if it is only collecting debts it purchased for itself.  See also Barbato v. Greystone

19   All., LLC, 916 F.3d 260, 261 (3d Cir.2019), cert. denied 140 S.Ct. 245, 205 L.Ed.2d 129 (2019).

20   Incredibly, Defendant argues that it wasn't really trying to collect the debt from Plaintiff!

21   Such an absurd defense, at best, is a matter to raise at trial or perhaps a Rule 56 motion, but not

22   on a Rule 12(c) motion.  Certainly, actual facts COULD support the proposition that Defendant

23   would really like Plaintiff to pay the debt.  The actual letters sent by Defendant certainly appear

24   to ask Plaintiff to pay, and expressly state "THIS IS AN ATTEMPT TO COLLECT A DEBT".

25   (Exhibits 1, 2, 3)  Plaintiff has allegedly that Defendant was trying to collect the debt, which is

26   more than sufficient to withstand Rule 12(c).  How could Defendant even stay in business, if it

27   didn't try to get its alleged debtors to pay up?  It would be NICE if Defendant wanted nothing!

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 15

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

1    Defendant's citation of supposed supporting case law on Page 16, Lines 16-24 is not even

2    comprehensible.  All four alleged authorities – <u>Lucero v. Cenlar FSB</u>; <u>Gilchrist v. Bayview Loan</u>

3    <u>Servicing, LLC</u>;  <u>Vien-Phuong Thi Ho v. Recontrust Co.,</u>; <u>Barnes v. Routh Crabtree Olsen PC</u> –

4    either do not address the FDCPA at all, or only deal with actions of a foreclosure trustee.

5    Defendant does not further ch the legal sufficiency of Plaintiff's FDCPA claim.

6    **Collection Agency Act Claims Valid Under Law Effective 2013 (before 2020 amendments)**

7    Defendant attempts to mislead the Court by incorrectly citing to 2020 amendments to the

8    Collection Agency Act, Chapter 19.16 RCW, which do not apply at all to this proceeding.  RCW

9    19.16.100 was last amended by Laws 2020, c 30 § 1, SHB 2476 (Exhibit 4), effective June 11,

10   2020.  The 2020 amendments only apply to junk debt purchased after June 11, 2020, Laws 2020,

11   c 30 § 5, and offer additional protections to alleged debtors against actions of junk debt buyers.

12   Plaintiff's lawsuit, of course, is based on Washington law which protects alleged debtor

13   against the actions of junk debt buyers (and other "collection agencies") who purchased such

14   debts prior to June 11, 2020.  Those debtors are protected just the same as persons pursued by

15   other "collection agencies" and have been so protected since October 1, 2013.  Exhibit 5 is a

16   copy of RCW 19.16.100 (2019), showing the law before the 2020 amendments.

17    These protectors against delinquent debt buyers were added Laws 2013, Chapter 148,

18   Section 1, SHB 1822 (Exhibit 6), which became effective on October 1, 2013 and are found at

19   RCW 19.16.100 (2019).  Under RCW 19.16.110(4)(d) (2019), "any person or entity that is

20   engaged in the business of purchasing delinquent or charged off claims for collection purposes,

21   whether it collects the claims itself or hires a third party for collection or an attorney for

22   litigation in order to collect such claims" must have a collection agency license.

23   If there are any doubts about the Washington Legislature's intentions in adopting Laws

24   2020, c 30 § 1, Final Bill Report for SHB 2476 (2020) (Exhibit 7) states under pre-existing law

25   The term collection agency is defined to encompass several categories of persons
     and entities, ***including any person or entity that is engaged in the business of***
26   ***purchasing delinquent or charged off claims for collection purposes***, whether it
     collects the claims itself or hires a third party for collection or an attorney for
27   litigation in order to collect such claims.

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 16

1    Defendant's attempt to attack the legal sufficiency of Plaintiff's Collection Agency Act

2    claims utterly fails, since it is based solely on interpreting 2020 amendments which do not apply.

3    Very clearly, Defendant is covered as a "collection agency" under RCW 19.16.110(4)(d) (2019).

4    Defendant makes a disingenuous argument that it is somehow exempted from coverage of

5    the Collection Agency Act by RCW 19.16.100(5)(c).  However, this exemption only applies to a

6    "business other than that of a collection agency".  And as we have seen, Defendant was a

7    "collection agency" under the express provisions of RCW 19.16.110(4)(d) (2019), even if the

8    mortgage debt at issue was purchased solely for Defendant's own benefit, instead of collecting

9    for others.  Moreover, Defendant has the temerity to offer a reference to its own self-serving

10   website – which is not proper evidence on a Rule 12(c) or even a Rule 56 motion.  Notably,

11   Defendant expressly admits its business is buying non-performing (i.e. delinquent) loans!

12   Defendant further misrepresents that Plaintiff pleaded "there is no record of Trinity

13   collecting debts against debtors in this state".  This is FALSE!  Plaintiff only alleges that

14   Defendant has never foreclosed on a mortgage in Washington, but clearly states Defendant is

15   trying to collect payments.  If only Defendant conceded that it wanted no money from Plaintiff!

16   Defendant does not further challenge the legal sufficiency of Plaintiff's Collection Agency

17   Act claims.  Plaintiff has alleged numerous actions in violation of RCW 19.16.110 and/or RCW

18   19.16.250 in Paragraphs 23-32, 45-52 and elsewhere.  Under RCW 19.16.440, any violation of

19   RCW 19.16.110 or RCW 19.16.250 is automatically a violation of the Consumer Protection Act,

20   Chapter 19.86 RCW.  Under RCW 19.16.450, any violation of RCW 19.16.250 forever forfeits

21   all right to recover interest, late fees, attorney fees, court costs, or any other amount other than

22   actual principal.  Plaintiff has also alleged that Defendant obtaining an out-of-state collection

23   agency license under RCW 19.16.100(12) prohibits in-state collection activities, such as filing

24   lawsuits or having foreclosure sales, and thereby merits quieting title.  All these must survive.

25                    **Real Estate Settlement Procedures ("RESPA") -- 12 U.S.C. § 2605(b)**

26   Defendant's sole legal challenge to Plaintiff's RESPA claim under 12 U.S.C. § 2605(b) is

27   asserting that it sent Plaintiff the purported August 13, 2015 letter proffered at dkt. 24-2.

28   

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 17

1  Plaintiff has expressly objected to consideration of this letter, disputing its veracity and

2  believing it to be a recent fabrication.  Plaintiff has also logically argued that neither Defendant

3  nor Dreambuilder Investments LLC had the Consumer Loan License required by RCW

4  31.04.035(1) to service residential mortgage loans at the time, which would make it illogical for

5  them to send a letter admitting to doing such a criminal act, especially when they had totally kept

6  silent about the loan since at least 2008.  This material is not proper under Rule 12(c) F.R.Civ.P.

7  Since Plaintiff has validly pleaded that Defendant failed to notify him of the loan

8  servicing transfer (whenever it might have been), this states a valid 12 U.S.C. § 2605(b) claim.

9  **Mortgage Loan Servicing Act – Chapter 19.148 RCW**

10  Plaintiff concedes that the mortgage loan at issue was not a purchase money mortgage,

11  and therefore his claim under Chapter 19.148 RCW should be dismissed or withdrawn.

12  **Periodic Billing Statements -- 15 U.S.C. § 1638(f)**

13  The Truth In Lending Act one year statute of limitations under 15 U.S.C. § 1640(e)

14  applies only to Plaintiff recovering affirmative monetary damages.  Regardless of the passage of

15  time, Plaintiff can use these (more than year old) violations as a set-off against a lawsuit by

16  Defendant on the loan (this compulsory counterclaim under Rule 13(a)(1) has not been brought,

17  and must be to avoid loss of all rights under res judicata) under 15 U.S.C. § 1640(e), or as a set-

18  off against foreclosure under 15 U.S.C. § 1640(k).  To the extent that otherwise time-barred

19  violations are not ripe to raise in this lawsuit, they will be in the future if there is enforcement.

20  Plaintiff may recover money damages for all violations after August 2, 2019 initiation date.

21  Under 15 U.S.C. § 1638(f), Defendant was required to send Plaintiff a periodic billing

22  statement each month, setting forth numerous items, including (A) The amount of the principal

23  obligation, (B) The current interest rate in effect, (C) The date on which the interest rate may

24  next reset or adjust, (D) The amount of any prepayment fee to be charged, if any, (E) A

25  description of any late payment fees, (F) A telephone number and electronic mail address to

26  obtain information, (G) Information on  counseling agencies or programs reasonably available to

27  the consumer and (H) Such other information as the may be prescribed in regulations.

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 18

1    Defendant misstates the law as to damages available for violation of 15 U.S.C. § 1638(f).

2    Actual damages under 15 U.S.C. § 1640(a)(1) is only one element of available damages.  In

3    addition, for EACH violation of 15 U.S.C. § 1638(f), statutory damages "relating to a credit

4    transaction not under an open end credit plan that is secured by real property or a dwelling, not

5    less than $400 or greater than $4,000" must be added under 15 U.S.C. § 1640(a)(2)(a)(iv).

6    Actual damages are an issue for trial, but substantial statutory damages are always mandated.

7    Defendant alleges that 15 U.S.C. § 1638(f) did not apply, because it "was not enforcing

8    payments in the year prior to case filing".  Motion, p. 14:23-24.  That is NOT the legal standard.

9    There is a regulatory-made exception for "charged-off" loans created under 12 CFR §

10   1026.41(e)(6).  This exception has not been pleaded in Defendant's Answer, much less briefed in

11   Defendant's motion to dismiss.  This exception has made very specific requirements – such as

12   actually telling the debtor the loan has been charged off and not charging any further interest or

13   fees.[3]  None of these conditions even appear to be met – and even if Defendant were to belatedly

14   argue that they were met, all these issues are disputed and not available on a Rule 12(c) motion.

15   Defendant's citation to Adrain v. Wells Fargo Bank, N.A. is ludicrous.  Adrain deals with

16   allegations of bad faith foreclosure mediation practices, not with periodic billing statements.

17   Defendant raises no other challenges to legal sufficiency of the 15 U.S.C. § 1638(f) claim.

18   **Failure to Disclose Transfer of Loan Ownership – 15 U.S.C. § 1641(g)**

19    Under 15 U.S.C. § 1641(g), Defendant was required to notify Plaintiff of the ownership

20   transfer on the second position deed of trust not later than 30 days after the transfer of

21   ownership.  Facial ownership (unclear who has beneficial ownership) of the second position

22   deed of trust was transferred to Defendant on August 1, 2016 and Defendant did not notify

23   Plaintiff of this until April 8, 2020.  Defendant does not challenge the legal sufficiency of this

24   claim (no magical "notice" offered up at this time), but alleges the statute of limitations.

25
   [3]  Plaintiff has never been told by anyone that the loan was "charged off".  Nor has Defendant ever claimed
   to have done so.  None of the correspondence by Defendant (Exhibits 1, 2, 3) claims there was any "charge off".
26   Instead, the 11/12/2020 letter by Defendant's counsel (Exhibit 2) indicates that $37,186.48 interest and $1,593.84
   late charges are owed, and that these are increasing on a daily basis – the exact opposite of a "charge-off".  Despite
27   all this, Defendant still refuses to provide Plaintiff with the monthly statements required by 15 U.S.C. § 1638(f).

28
   PLAINTIFF'S RESPONSE TO
   DEFENDANT'S MOTION TO DISMISS -- 19

1    Defendant evidently concedes that a 15 U.S.C. § 1641(g) can be excepted from the

2    statute of limitations by the discovery rule.  After all, if ownership of a home mortgage is

3    transferred to another creditor, there would normally be no way that a homeowner would

4    actually find out – unless the servicer told the homeowner.  This is the very reason that Congress

5    enacted 15 U.S.C. § 1641(g).  To not allow discovery rule exception for this would simply

6    encourage creditors to never inform the homeowner, and hope they don't find out within a year.

7        Defendant instead believes courts should expect homeowners to constantly log in to the

8    county website (or travel to the county seat, in less computer savvy counties, or those with very

9    restricted website privacy rules like California) to see if their mortgage has been transferred to

10   someone else.  Enacting such a "constructive notice" requirement would totally vitiate the

11   purposes of 15 U.S.C. § 1641(g), which affirmatively require lenders to make such disclosures.

12   And of course, <u>Pearse v. First Horizon Home Loan Corp.</u>, cited by Defendant, has absolutely

13   nothing to do with 15 U.S.C. § 1641(g), but a novel claim of "securitization" concealment.

14   Perhaps people worried about "securitization" might be well advised to regularly visit the county

15   courthouse, but ordinary folks should rely on lenders to disclose under 15 U.S.C. § 1641(g).

16       In the event the discovery rule did not apply, Plaintiff's 15 U.S.C. § 1641(g) claim can

17   still be used as a set-off at an appropriate time (perhaps) now, as per previous section argument.

18                    **<u>Consumer Protection Act Claim – Chapter 19.86 RCW</u>**

19       The purpose of the Washington Consumer Protection Act (CPA), Chapter 19.86 RCW, is

20   "to complement the body of federal law governing restraints of trade, unfair competition and

21   unfair, deceptive and fraudulent acts or practices in order to protect the public and foster fair and

22   honest competition."  RCW 19.86.920.  Individuals injured in their business or property by

23   C.P.A. violations may bring suit to recover damages from the wrongdoer.  RCW 19.86.090.  To

24   prevail in a C.P.A. action, a plaintiff must prove (1) unfair or deceptive act or practice (2)

25   occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in business or

26   property and (5) causation of the injuries by acts complained of.  <u>Hangman Ridge Training v.</u>

27   <u>Safeco Title Ins.</u>, 105 Wn.2d 778, 780, 719 P.2d 531, 533 (1986).

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 20

1   The existence of an unfair or deceptive act or practice occurring in trade or commerce

2   can be established by showing either that:  (1) the act or practice violates a statute which has

3   been declared by the legislature to constitute an unfair or deceptive act in trade or commerce (per

4   se unfair trade practice) or (2) the act or practice has the capacity to deceive a substantial portion

5   of the public and occurs in the conduct of any trade or commerce (de facto deceptive trade

6   practice).  Hangman Ridge, 719 P.2d at 535.

7   Plaintiff's First Cause of Action (Complaint, ¶¶ 41-65) is for a "per se unfair trade

8   practice" violation related to the Collection Agency Act.  While Defendant made an unavailing

9   challenge that it is somehow not a "collection agency", Defendant has not challenged the legal

10  sufficiency of any of Plaintiff's claims that RCW 19.86.110 and/or RCW 19.86.250 were

11  violated.  (Complaint, ¶¶ 45-49)  Under 19.16.440, such violations of RCW 19.86.110 and/or

12  RCW 19.86.250 are per se "declared to be unfair acts or practices or unfair methods of

13  competition in the conduct of trade or commerce".  This legal sufficiency is not disputed.

14  Plaintiff's Second Cause of Action (Complaint, ¶¶ 66-85) is for a "de facto deceptive

15  trade practice" violation of the Consumer Protection Act.  Plaintiff specifically alleged that:

16          68.     Defendant's failure to notify Plaintiff and other homeowners of the
        loan servicing transfer on the second position deed of trust at least 15 days before
17      the transfer of servicing and in no event more than 30 days after transfer of
        servicing, as required by 12 U.S.C. § 2605(b), or at least 30 days prior to the next
18      payment due date as required by RCW 19.148.030(2), and instead making such
        notification on April 8, 2020, over 3-1/2 years after the transfer on August 1, 2016,
19      was deceptive and unfair.

20          69.     Defendant's failure to notify Plaintiff and other homeowners of the
        ownership transfer on the second position deed of trust within 30 days of
21      ownership transfer, as required by 15 U.S.C. § 1641(g), and instead making such
        notification on April 8, 2020, over 3-1/2 years after the transfer on August 1, 2016,
22      was deceptive and unfair.

23          70.     Defendant's failure to provide Plaintiff with a periodic billing
        statement prior to each monthly payment due date, as required by 15 U.S.C. §
24      1638(f), was deceptive and unfair.

25          71.     Defendant's false representation that its second position deed of
        trust constituted a valid security interest against Plaintiff's residence which could
26      be enforced by foreclosure or by lawsuit including personal liability, when such
        action could not legally be taken due to Defendant only possessing an Out-of-State
27      Collection Agency License which does not allow taking in-state actions such as

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 21

Lake Hills Legal Services PC
15600 N.E. 8th St., # B1-358
Bellevue, Washington  98008
Telephone:  (425) 829-5305
E-mail:  rp98007@gmail.com

1    lawsuits and foreclosure sales, and when enforcement being barred by the statute
     of limitations, as well as due to laches and waiver, was deceptive and unfair.

2          72.    Defendant's attempt to obtain confidential personal and financial
3    information for Plaintiff, including social security number, income information,
     asset information, liability information, and other personal information, as well as
4    a general expense to allow all third parties to disclose information about Plaintiff,
     when such action could not legally be taken due to Defendant only possessing an
5    Out-of-State Collection Agency License which does not allow taking in-state
     actions such as lawsuits and foreclosure sales, and also due to enforcement being
6    barred by the statute of limitations, as well as due to laches and waiver, was
     deceptive and unfair.

7          73.    Defendant's other violations of the Collection Agency Act and
8    other applicable state and federal laws was deceptive and unfair.

9        Plaintiff obviously asserts that each and every one of the sets of allegations are

10   "deceptive and unfair" acts or practice y Defendant, and thereby in violation of RCW 19.86.020.

11   Defendant offers absolutely no argument to the contrary in its Rule 12(c) motion.  Not once does

12   Defendant argue that it is factually implausible for Plaintiff to prove any of the six groups of

13   allegations, nor does Defendant argue that any of these six groups of allegations, if proven true,

14   would somehow not constitute an unfair or deceptive act or practice against the Plaintiff.

15       Instead, Defendant merely offers the short conclusory argument that they were merely

16   "stand[ing] by their contracts rights".  Nowhere does Defendant bother to explain how they

17   spmehow have the "contracts rights" to do any of the things Plaintiff alleges in Paragraphs 68-73

18   of his complaint.  And quite obviously, Plaintiff isn't suing Defendant over anything that there is

19   any sort of "contracts rights" to do – but instead over specified "deceptive and unfair acts".

20       Consistently with most other states, Washington requires a private CPA plaintiff to

21   establish the deceptive act caused injury. Hangman Ridge, 105 Wn.2d at 794, 719 P.2d 531; Bob

22   Cohen, Annotation, Right to Private Action under State Consumer Protection Act-Preconditions

23   to Action, 117 A.L.R.5th 155 (2004) (discussing injury requirement as precondition to private

24   right of action under state consumer protection act; collecting cases). The injury requirement is

25   met upon proof the plaintiff's " property interest or money is diminished because of the unlawful

26   conduct even if the expenses caused by the statutory violation are minimal." Mason v. Mortgage

27   Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990) (temporary loss of use of property while

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 22

brokerage company improperly withheld title constituted sufficient injury to support attorney fee

award under the CPA) (*citing* Hangman Ridge, 105 Wn.2d at 792, 719 P.2d 531). Pecuniary

losses occasioned by inconvenience may be recoverable as actual damages. Keyes, 31 Wn. App.

at 296, 640 P.2d 1077; Tallmadge v. Aurora Chrysler Plymouth, Inc., 25 Wn. App. 90, 605 P.2d

1275 (1979) (costs associated with traveling to dealership in reliance on false advertisements).

"Injury" is distinct from " damages." Nordstrom, 107 Wn.2d at 740, 733 P.2d 208.

Monetary damages need not be proved; unquantifiable damages may suffice. Id. (loss of

goodwill); Nw. Airlines, Inc. v. Ticket Exch., Inc., 793 F.Supp. 976 (W.D.Wash., 1992) (proof

of injury satisfied by " stowaway theory" where damages are otherwise unquantifiable in case

involving deceptive brokerage of frequent flier miles); Fisons, 122 Wn.2d 299, 858 P.2d 1054

(damage to professional reputation); Sorrel v. Eagle Healthcare, Inc., 110 Wn. App. 290, 298, 38

P.3d 1024 (2002) (injury by delay in refund of money); Webb v. Ray, 38 Wn. App. 675, 688

P.2d 534 (1984) (loss of use of property).

In the present case, Plaintiff had to consult "with an attorney to dispel uncertainty

regarding the nature of [the] alleged debt" claimed by Defendant, and such pre-litigation attorney

fees to determine the consequences of unfair and deceptive practices are specifically allowed

under Panag v. Farmers Ins. Co. of Washington, 166 Wn.2d 27, 63, 204 P.3d 885 (2009) as the

type of injury to "business or property" that will support a CPA claim under RCW 19.86.090.

In addition, Defendant's violations of RCW 19.16.250 (Collection Agency Act) require

Defendant to forfeit "interest, service charge, attorneys' fees, collection costs, delinquency

charge, or any other fees or charges" under RCW 19.16.450 and collect only unpaid principal.

These amounts are substantial and certainly constitute a sufficient "injury to property".

Plaintiff has also alleged that he paid out nearly $56,000.00 in conjunction with his 2017

Chapter 13 bankruptcy case (Complaint, ¶16) that he would not have paid out had Defendant not

unfairly and deceptively concealed the existence of its loan by illegally failing to communicate at

all with Plaintiff (as it and its predecessors in interest had failed to do since 2008).  This is a very

substantial loss of "property" alleged by Plaintiff as the result of this unfairness and deception.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 23

1    Last but not least, Plaintiff has alleged a pecuniary loss of $25,000.00 due to "loss of

2 current opportunities to sell property". (dkt. 1-2 at p. 2)  This is also an injury to "property".

3    Defendant does not otherwise challenge the legal sufficiency of Plaintiff's CPA claim.

4                    **Defendant is Not Entitled to Attorney Fees**

5    Defendant's motion to dismiss should be denied.  This makes any attorney fees premature.

6    Plaintiff's FDCPA claim should not be dismissed, and in any event is not in bad faith.

7 Defendant even admits in its letters to being a "debt collector". (Exhibits 1, 3)  Plaintiff argues

8 the "debt collector" issue in good faith, and Defendant does not otherwise dispute FDCPA claim.

9 Plaintiff's August 5, 2020 attempt to settle before filing (dkt. 1-2) was certainly not in bad faith –

10 nor did Defendant challenge any of Plaintiff's claims before <u>Defendant decided to file this suit</u>.

11 Notably, Plaintiff is seeking only $1,000.00 statutory damages on the FDCPA claim (dkt. 1-2 at

12 p. 2), with all other damages in common with other causes of action.  FDCPA is not "bad faith".

13    There are many reasons why Defendant would not be contractually entitled to attorney

14 fees, even if Plaintiff's claims were dismissed.  First, RCW 19.16.450 would specifically bar

15 attorney fees if Defendant is a "collection agency" under RCW 19.16.100(4)(d) (2019), given the

16 Defendant does not deny the RCW 19.16.250 violations set forth at Complaint, ¶¶ 46-49.

17    Second, the Deed of Trust (dkt. 24-1) attorney fee rights of Plaintiff are very limited.

18 Paragraph 17 only deals with attorney fees if Defendant starts a foreclosure – and this lawsuit is

19 not a foreclosure action (or counterclaim).  Paragraph 7 only deals with a lawsuit claim which

20 "materially affects Lender's interest in the Property".  This, at best, would cover only the quiet

21 title aspects, and not Plaintiff's claims for damages for other bases.  Paragraph 7 also provides

22 any such attorney fees "shall become additional indebtedness of Borrower secured by this Deed

23 of Trust".  This provision, if Plaintiff loses, would simply increase the debt owed under the Deed

24 of Trust (if not otherwise barred by res judicata due to lack of compulsory counterclaim), unless

25 Defendant were to amend its lawsuit to add a counterclaim for payment of the promissory note.

26                              **Conclusion**

27    For all the reasons stated above, Defendant's motion to dismiss should be denied.

28

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 24

**Lake Hills Legal Services PC**
**15600 N.E. 8th St., # B1-358**
**Bellevue, Washington  98008**
**Telephone:  (425) 829-5305**
**E-mail:  rp98007@gmail.com**

Respectfully submitted this 8th day of March 2021.

/s/ Richard L. Pope, Jr.
RICHARD L. POPE, JR.
WSBA # 21118
Attorney for Plaintiff

Lake Hills Legal Services, P.C.
15600 N.E. 8th Street, Suite B-358
Bellevue, Washington  98008
Tel:  (425) 829-5305
Fax:  (425) 526-5714
E-Mail:  rp98007@gmail.com

## **Proof of Service**

I certify that, on March 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following registered with CM/ECF, including the Honorable James L. Robart, and all counsel of record for the other parties to this case, including the following people listed on the system:

**Joseph W. McIntosh   jmcintosh@mccarthyholthus.com**

**Richard Lamar Pope , Jr   rp98007@gmail.com**

Signed at Bellevue, Washington this 8th day of March 2021.

/s/ Richard L. Pope, Jr.
RICHARD L. POPE, JR.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS -- 25

# EXHIBIT 1



October 26, 2020

Via Certified Mail

RICHARD DWYER
25322 113TH AVE SE
KENT, WA 98030

# MORTGAGE ASSISTANCE APPLICATION

Dear RICHARD DWYER:

This letter is ~~in response to your recent inquiry~~ regarding a temporary payment plan, short sale, or settlement agreement regarding the above referenced loan. <u>Please complete this entire package with supporting documentation</u> and forward it to Trinity Financial Services, LLC.

**DO NOT send an incomplete package, or your request will not be considered.**
**No package will be processed until ALL items requested herein are received.**

The documentation you provide will be reviewed and verified. The information obtained will help in assessing your financial situation. Please be advised that submission of this information is not a guarantee that a payment plan or short sale of any kind will be approved.

**Please send this completed package via:**

**Email:**

LNP@trinityfs.com

OR

**Overnight address:**
Trinity Financial Services, LLC
2618 San Miguel Drive, Ste 303
Newport Beach, CA 92660

OR

**Fax:**

(805) 516-2608

*THIS IS AN ATTEMPT TO COLLECT A DEBT. THIS COMMUNICATION IS FROM A DEBT COLLECTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. You have a right to dispute this debt, in part or in full, with Trinity Financial Services, LLC within 30 days. If Trinity Financial Services, LLC does not receive a response from you within 30 days, the debt will be assumed VALID.*

**Toll Free: 855.818.6806 | Fax: 805.516.2608 | 2618 San Miguel Dr., Suite 303 Newport Beach, CA. 92660**

009103-O0015286-0 [PAG.148] [DOC 23 26/28 Id.8130658]

 

**THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.**

**NOTICE TO DEBTOR(S) IN BANKRUPTCY:** This paragraph is a special notice to our customers who have filed a petition for protection under the United States Bankruptcy Code. Unless you have signed a reaffirmation agreement with the lender, and that agreement has been filed with the bankruptcy court (and not subsequently rescinded or disallowed in accordance with the Bankruptcy Code), you should disregard all portions of this letter which state or suggest that you still have a personal liability to pay the lender. You may wish to consult with an attorney regarding this letter, your bankruptcy and the ability of the lender to enforce its lien on collateral, if any. If you have obtained a discharge under the Bankruptcy Code this letter is for informational purposes or to protect our interests in any collateral.



# EXHIBIT B
## Borrower's Statement of Attorney Representation

Currently, a lawsuit has not been filed in your state regarding this issue. Please contact your attorney immediately. If this matter is not resolved, Trinity Financial Services, LLC will pursue this matter by any legal means necessary, including but not limited to, possible foreclosure of the property specified in the mortgage/deed of trust or possible initiation of a lawsuit for personal liability of your debt to Trinity Financial Services, LLC.

You are not required to be represented by an attorney but it is HIGHLY recommended. If you are not represented by an attorney but wish to be, you may contact the American Bar Association for a referral to an attorney in your state. The link to the American Bar Association's referral website is www.FindLegalHelp.org.

❑   I am currently not represented by an attorney. I have been advised that legal representation is recommended but not required. Please contact me directly regarding the negotiation of this loan. I reserve the right to retain an attorney at a future date.

❑   I am currently not represented by an attorney, but I am in the process of obtaining an attorney. I have contacted the American Bar Association and/or have used an attorney referral service. Until an attorney has contacted Trinity Financial Services, LLC please contact me directly.

❑   I am currently represented by an attorney. Their contact information is as follows:

Firm Name:               _____

Attorney Name:           _____
Address:                 _____

                         _____

Phone Number:            _____

Fax Number:              _____

Email:                   _____


_____
Borrower Signature

_____          _____
Printed Name                         Date

EXHIBIT 2



# WRIGHTFINLAY&ZAK LLP
### ATTORNEYS AT LAW

Main Office
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Main Phone: (949) 477-5050
Email Fax: (949) 608-9142

www.wrightlegal.net

Sent Via First Class and Certified Mail

Direct Dial: 949-610-7017

November 12, 2020

Richard T. Dwyer
25322 113th Ave SE
Kent, WA 98030

Re:   Case Name            : Dwyer, Richard T.
      Property Address     : 25322 113th Ave SE, Kent, Washington, 98030
      Client Reference No. : 1500022022
      WFZ Case No.         : 315-2020179

## RE: NOTICE OF DEFAULT

PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692e(11), PLEASE BE ADVISED THAT THE UNDERSIGNED FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Dear Mr. Dwyer:

This law firm represents Trinity Financial Services, LLC (hereinafter the "Beneficiary"), the current beneficiary of a promissory note secured by a deed of trust (collectively referred to as the "Loan"), which encumbers real property located at 25322 113th Ave SE, Kent, Washington, 98030 (the "Property").

   The nonpayment of principal and interest on the Loan, including your failure to pay the May 2015 installment and sums due and owing thereafter, is a breach of the Loan terms.  Please be advised that as of 12/12/2020, the reinstatement amount required to cure the breach is $39,096.01.

   Because interest and other charges may vary from day to day, the amount due on the day paid may be different.  Hence, if payment in the reinstatement amount shown above is submitted, an adjustment may be necessary after the receipt of the payment. If this sum is submitted, please also immediately contact the beneficiary at (855) 818-6806 so they can promptly discuss other amounts remaining due, if applicable.

---

Nevada Office
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
Main Phone: (702) 475-7964
Main Fax: (702) 946-1345

Arizona Office
2800 N. Central Ave., Suite 1217
Phoenix, AZ 85004
Main Phone: (949) 477-5050

Washington Office
612 South Lucile, Suite 300
Seattle, WA 98108
Main Phone: (425) 296-3116

Utah Office
2975 W. Executive Pkwy, Suite 233
Mailbox 155
Lehi, UT 84043
Main Phone: (801) 893-4901
Main Fax (702) 946-1345

Oregon Office
121 SW Morrison, Suite 1100
Portland, OR 97204
Main Phone: (503) 479-8871
Main Fax (949) 608-9142

Alternatively, to pay the entire sum secured by the Deed of Trust, the total loan payoff amount as of 12/12/2020 is $91,303.85.  This payoff amount includes:

| | |
|---|---|
| Unpaid Principal Balance | $52,396.20 |
| Accrued Interest | $37,186.48 |
| Late Charges | $1,593.84 |
| TOTAL | $91,303.85 |

Again, because interest and other charges may vary from day to day, the amount due after the date of this letter may be different.

To cure the breach, the following must occur:
1. Funds for the full reinstatement or payoff amount must be received at the address stated in the paragraph below no later than 5:00 p.m. PT on December 12, 2020.
2. Funds must be in the form of ONE cashier's check or money order (certified funds only) made payable to Trinity Financial Services, LLC for either: $39,096.01 if reinstating the loan and curing the breach, OR $91,303.85 if paying off the loan, and mailed to:
   Trinity Financial Services, LLC
   2618 San Miguel Drive, Suite 303
   Newport Beach, CA 92660
3. No partial payments will be accepted.
4. Only cashier's checks or money orders will be accepted.  No trust account, escrow, or personal checks will be accepted.

If funds are not submitted by the date listed above, the beneficiary can provide updated reinstatement and/or payoff quote accurate through a specific future date.  Such request, however, does not affect the Beneficiary's rights as stated herein.

Should you tender either reinstatement or payoff funds after the date when your next monthly installment on the loan becomes due subsequent to this letter, please note such funds would not cover that monthly installment.  Further payments in this circumstance must be made directly to the Beneficiary.

If the breach stated herein is not cured by December 12, 2020, the Beneficiary retains the right to pursue any remedies permitted by applicable law and/or the Deed of Trust, such as accelerating the loan and/or conducting a foreclosure of the Property at public auction.

**For potential assistance to remedy your default on the loan, you can contact the beneficiary at (855) 818-6806 to engage in a discussion concerning available options such as requesting a loan modification application.**

If you have filed bankruptcy, enforcement of the debt would not occur during pendency of the case or until relief from stay is granted.  If you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this letter is not an attempt to impose personal liability upon you for payment of

| Nevada Office | Arizona Office | Washington Office | Utah Office | Oregon Office |
|---|---|---|---|---|
| 7785 W. Sahara Ave., Suite 200 | 16427 N. Scottsdale Road, Suite 300 | 3600 15th Ave W., Suite 202 | 2975 W. Executive Pkwy, Suite 233 | 121 SW Morrison, Suite 1100 |
| Las Vegas, NV 89117 | Scottsdale, AZ 85254 | Seattle, WA 98119 | Mailbox 155 | Portland, OR 97204 |
| Main Phone: (702) 475-7964 | Main Phone: (949) 477-5050 | Main Phone: (425) 296-3116 | Lehi, UT 84043 | Main Phone: (503) 479-8871 |
| Main Fax: (702) 946-1345 | | | Main Phone: (801) 893-4901 | Main Fax (949) 608-9142 |
| | | | Main Fax (702) 946-1345 | |

Page 3

that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the Property only.

If, and to the extent that, the Beneficiary may in any way be deemed to have waived any of the time-essence provisions in documents evidencing and/or securing the loan, the Beneficiary hereby reinstates those provisions. By delivering the above quote(s), the Beneficiary does not waive its right to enforce any and all remedies afforded by law or the loan documents including, without limitation, its right to enforce due on sale provisions.

Please note that you have the right to bring a court action to assert the nonexistence of a breach or any other defense permitted by applicable law and/or the Deed of Trust. If you believe that any portion of this notice is in error, please notify our office as follows.

---

THE FOLLOWING IS A NOTICE TO YOU AS A CONSUMER DEBTOR:

As of the date of this notice, you owe the total amount stated on the first page herein to the creditor also named as the Beneficiary on the first page. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Please be advised that, because this letter is being sent to you in connection with a consumer debt, you may have certain rights under federal law. First, unless within thirty (30) days after receipt of this notice, you dispute the debt or any portion of it, we will assume the debt to be valid. Second, if you notify us in writing within thirty (30) days after receipt of this notice that you dispute the debt or any part of it, we will request that the creditor obtain verification of the debt and mail it to you. Third, if you request in writing within thirty (30) days after receipt of this notice, we will request that the creditor provide you with the name and address of the original creditor, if different from the current creditor. PLEASE BE ADVISED THAT LEGAL ACTION AND/OR FORECLOSURE PROCEEDINGS MAY BE COMMENCED AGAINST YOU DURING THE THIRTY (30) DAY PERIOD REFERRED TO IN THIS PARAGRAPH.
All written requests should be addressed to **Trinity Financial Services, LLC, 2618 San Miguel Drive, Suite 303, Newport Beach, CA 92660.**

---

Sincerely,

**WRIGHT, FINLAY & ZAK, LLP**

**Joyce Copeland Clark**
**Director Default Operations**

| Nevada Office | Arizona Office | Washington Office | Utah Office | Oregon Office |
|---|---|---|---|---|
| 7785 W. Sahara Ave., Suite 200 | 16427 N. Scottsdale Road, Suite 300 | 3600 15th Ave W., Suite 202 | 2975 W. Executive Pkwy, Suite 233 | 121 SW Morrison, Suite 1100 |
| Las Vegas, NV 89117 | Scottsdale, AZ 85254 | Seattle, WA 98119 | Mailbox 155 | Portland, OR 97204 |
| Main Phone: (702) 475-7964 | Main Phone: (949) 477-5050 | Main Phone: (425) 296-3116 | Lehi, UT 84043 | Main Phone: (503) 479-8871 |
| Main Fax: (702) 946-1345 | | | Main Phone: (801) 893-4901 | Main Fax (949) 608-9142 |
| | | | Main Fax (702) 946-1345 | |

# EXHIBIT 3



April 8, 2020

Via Priority Mail

RICHARD DWYER
25322 113TH AVE SE
KENT, WA 98030

|  | RE: | Account No.: | 1500022022 |
|---|---|---|---|
|  |  | Property Address: | 25322 113TH AVE SE, KENT, WA 98030 |
|  |  | Unpaid Principal Balance: | $52,396.20 |

Dear RICHARD DWYER:

We have reviewed your file and confirmed that your payments on the above-referenced Account are seriously past due.

Trinity Financial Services, LLC is owner and servicer for your account, and we understand that it can be difficult to get your financial matters back on track and that catching up on past mortgage payments can feel overwhelming.  We also know that the COVID-19 virus has placed a strain on many homeowners.

We want to offer assistance to you, if you need help.  Please find enclosed important information regarding the assistance you may be eligible for or simply call us at (855) 818-6806 to explore what assistance may be available to you.

To get started, please complete the enclosed Mortgage Assistance Application form and send it with the other required documents to us by any of the following methods:

| | |
|---|---|
| Email to: | LNP@trinityfs.com |
| Overnight mail to: | Trinity Financial Services, LLC |
| | 2618 San Miguel Drive, Ste 303 |
| | Newport Beach, CA 92660 |
| Fax to: | (805) 516-2608 |

Further, please advise us of any recent hardship you may be experiencing due to the COVID-19 virus, so we might assess what other assistance might be available to you[1].

By returning Mortgage Assistance Application form and the other required documents, we will be better able to conduct an individual assessment of your file for a possible loan modification or other accommodation to avoid foreclosure.

---

[1] Please note that those affected by COVID-19 may be eligible for specific hardship programs based on state.

If you need assistance filling out the Mortgage Assistance Application form or have questions about the required documents or your Account, please do not hesitate to contact us at (855)818-6806.

Please note that because of the age of your Account and the time that has passed since your last payment, it is possible that we cannot sue you to collect what you owe. We do, however, have a continuing and enforceable security interest in the Property described above. If you choose not to make payments or explore loan modification or other options with us, we may elect to enforce our security interest and foreclose on the Property.

Sincerely,

Loss Mitigation Department
Trinity Financial Services, LLC

**THIS IS AN ATTEMPT TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.**

**NOTICE: If you are entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the subject matter of this letter, the following applies to you: THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT, ASSESS, OR RECOVER A CLAIM IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY. You may wish to consult with an attorney regarding this letter, your bankruptcy and the ability of the lender to enforce its lien on collateral, if any. If you have obtained a discharge under the Bankruptcy Code, this letter is for informational purposes or to protect our interests in any collateral.**

# Mortgage Assistance Application

If you are having mortgage payment challenges, please complete and submit this application, along with the required documentation, to us (Trinity Financial Services, LLC) by one of the methods described on the accompanying letter. We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.

We will use the information you provide to help us identify the assistance you may be eligible to receive. If you need help completing this application, please contact us at (855)818-6806.

For a list of HUD-approved housing counseling agencies that can provide foreclosure prevention information, contact one of the following federal government agencies:

- The U.S. Department of Housing and Urban Development (HUD) at (800) 569-4287 or www.hud.gov/counseling
- The Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or www.consumerfinance.gov/mortgagehelp

If you need assistance with translation or other language assistance, HUD-approved housing counseling agencies may be able to assist you. These services are provided without charge.

## Borrower Information

Borrower's name: _____

Social Security Number (last 4 digits): _____

E-mail address: _____

Primary phone number: _____ □ Cell  □ Home  □ Work  □ Other

Alternate phone number: _____ □ Cell  □ Home  □ Work  □ Other

Co-borrower's name: _____

Social Security Number (last 4 digits): _____

E-mail address: _____

Primary phone number: _____ □ Cell  □ Home  □ Work  □ Other

Alternate phone number: _____ □ Cell  □ Home  □ Work  □ Other

Preferred contact method (choose all that apply): □ Cell phone □ Home phone □ Work phone □ Email □ Text—checking this box indicates your consent for text messaging

Is either borrower on active duty with the military (including the National Guard and Reserves), the dependent of a borrower on active duty, or the surviving spouse of a member of the military who was on active duty at the time of death? □ Yes □ No

## Property Information

Property Address: _____

Mailing address (if different from property address): _____

- The property is currently:  □ A primary residence   □ A second home   □ An investment property

- The property is (select all that apply):  □ Owner occupied   □ Renter occupied   □ Vacant

- I want to:  ☐ Keep the property  ☐ Sell the property  ☐ Transfer ownership of the property to my servicer ☐ Undecided

Is the property listed for sale?  ☐ Yes  ☐ No – If yes, provide the listing agent's name and phone number—or indicate "for sale by owner" if applicable: _____

Is the property subject to condominium or homeowners' association (HOA) fees? ☐ Yes ☐ No – If yes, indicate monthly dues:  $_____

## Hardship Information

The hardship causing mortgage payment challenges began on approximately (date) _____ and is believed to be:

- ☐  Short-term (up to 6 months)
- ☐  Long-term or permanent (greater than 6 months)
- ☐  Resolved as of (date) _____

| TYPE OF HARDSHIP (CHECK ALL THAT APPLY) | REQUIRED HARDSHIP DOCUMENTATION[2] |
|---|---|
| ☐ Unemployment | ▪ Not required |
| ☐ Reduction in income: a hardship that has caused a decrease in your income due to circumstances outside your control (e.g., elimination of overtime, reduction in regular working hours, a reduction in base pay) | ▪ Not required |
| ☐ Increase in housing-related expenses: a hardship that has caused an increase in your housing expenses due to circumstances outside your control (e.g., uninsured losses, increased property taxes, HOA special assessment) | ▪ Not required |
| ☐ Disaster (natural or man-made) impacting the property or borrower's place of employment | ▪ Not required |
| ☐ Long-term or permanent disability, or serious illness of a borrower/co-borrower or dependent family member | ▪ Written statement from the borrower, or other documentation verifying disability or illness **Note**: Detailed medical information is not required, and information from a medical provider is not required |
| ☐ Divorce or legal separation | ▪ Final divorce decree or final separation agreement **OR** ▪ Recorded quitclaim deed |
| ☐ Separation of borrowers unrelated by marriage, civil union, or similar domestic partnership under applicable law | ▪ Recorded quitclaim deed **OR** ▪ Legally binding agreement evidencing that the non- occupying borrower or co-borrower has relinquished all rights to the property |
| ☐ Death of borrower or death of either the primary or secondary wage earner | ▪ Death certificate **OR** ▪ Obituary or newspaper article reporting the death |

---

[2] **Trinity Financial Services, LLC may request or require additional documentation after a review of your file.**

| ☐ Distant employment transfer/relocation | ▪ **For active duty service members**: Permanent Change of Station (PCS) orders or letter showing transfer.<br>▪ **For employment transfers/new employment**: Copy of signed offer letter or notice from employer showing transfer to a new location or written explanation if employer documentation not applicable, **AND**<br>▪ Documentation that reflects the amount of any relocation assistance provided (not required for those with PCS orders) |
|---|---|
| ☐ COVID-19 Virus | ▪ Not required |
| ☐ Other – hardship that is not covered above:<br><br>_____<br>_____<br>_____<br>_____ | ▪ Written explanation describing the details of the hardship and any relevant documentation |

## Borrower Income

Please enter all borrower income amounts in middle column.  We will use this information toward evaluating you for eligibility for a loss mitigation option.

| MONTHLY TOTAL BORROWER INCOME TYPE & AMOUNT | | REQUIRED INCOME DOCUMENTATION |
|---|---|---|
| Gross (pre-tax) wages, salaries and overtime pay, commissions, tips, and bonuses | $ | ▪ Most recent pay stub and documentation of year-to- date earnings if not on pay stub **OR**<br>▪ Two most recent bank statements showing income deposit amounts |
| Self-employment income | $ | ▪ Two most recent bank statements showing self- employed income deposit amounts **OR**<br>▪ Most recent signed and dated quarterly or year-to-date profit/loss statement **OR**<br>▪ Most recent complete and signed business tax return **OR**<br>▪ Most recent complete and signed individual federal income tax return |
| Unemployment benefit income | $ | ▪ No documentation required |
| Taxable Social Security, pension, disability, death benefits, adoption assistance, housing allowance, and other public assistance | $ | ▪ Two most recent bank statements showing deposit amounts **OR**<br>▪ Award letters or other documentation showing the amount and frequency of the benefits |
| Non-taxable Social Security or disability income | $ | ▪ Two most recent bank statements showing deposit amounts **OR** |

| | | |
|---|---|---|
| | | ▪ Award letters or other documentation showing the amount and frequency of the benefits |
| Rental income (rents received, less expenses other than mortgage expense) | $ | ▪ Two most recent bank statements demonstrating receipt of rent **OR**<br><br>▪ Two most recent deposited rent checks |
| Investment or insurance income | $ | ▪ Two most recent investment statements **OR**<br><br>▪ Two most recent bank statements supporting receipt of the income |
| Other sources of income not listed above (Note: Only include alimony, child support, or separate maintenance income if you choose to have it considered for repaying this loan) | $ | ▪ Two most recent bank statements showing receipt of income **OR**<br><br>▪ Other documentation showing the amount and frequency of the income |

## Current Borrower Assets

Exclude retirement funds such as a 401(k) or Individual Retirement Account (IRA), and college savings accounts such as a 529 plan.

| | |
|---|---|
| Checking account(s) and cash on hand | $ |
| Savings, money market funds, and Certificates of Deposit (CDs) | $ |
| Stocks and bonds (non-retirement accounts) | $ |
| Other: | $ |

## Authorization to Release Information

I hereby authorize Trinity Financial Services, LLC and/or any designated agent, assistant, Title Company or its agents to verify any and all information pertaining to the mortgage or property detailed below and any additional financial information pertaining to this property and individual Borrower.

It is understood a photocopy or fax of this form will also serve as authorization.

Property Address: _____

**Current Owner of 1st Mortgage:**

Mortgage Company: _____

Account Number: _____

Account Opened: _____

Note Amount: _____

**Current Owner of 2nd Mortgage:**

Mortgage Company: _____

Account Number: _____

Account Opened: _____

Note Amount: _____

**Authorized by:**

Borrower Printed Name: _____ SSN:_____ DOB: _____

Borrower signature: _____ Date: _____

## Borrower Certification and Agreement

1. I certify and acknowledge that all of the information in this Mortgage Assistance Application is truthful, and the hardship I identified contributed to my need for mortgage relief. Knowingly submitting false information may violate Federal and other applicable law.

2. I agree to provide Trinity Financial Services, LLC with all required documents, including any additional supporting documentation as requested, and will respond in a timely manner to all Trinity Financial Services, LLC communications.

3. I acknowledge and agree that Trinity Financial Services, LLC is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.

4. I consent to Trinity Financial Services, LLC obtaining a current credit report for the borrower and co-borrower.

5. I consent to the disclosure by Trinity Financial Services, LLC of any personal information collected for the purpose of processing my mortgage assistance request, to any third party that deals with my first lien or subordinate lien (if applicable) mortgage loan(s), including Fannie Mae, Freddie Mac, or any investor, insurer, guarantor, or servicer of my mortgage loan(s) or any companies that provide support services to them. Personal information may include, but is not limited to: (a) my name, address, telephone number, (b) my Social Security number, (c) my credit score, (d) my income, and (e) my payment history and information about my account balances and activity.

6. I agree that the terms of this borrower certification and agreement will apply to any loan modification plan, repayment plan, or forbearance plan that I may be offered based on this application.

7. I consent to being contacted concerning this application for mortgage assistance at any telephone number, including mobile telephone number, or email address I have provided to Trinity Financial Services, LLC or the original lender, prior servicer, or other authorized third party.

Borrower signature: _____ Date: _____

Co-Borrower signature: _____ Date: _____

**Please submit your completed application, together with the required documentation, to Trinity Financial Services, LLC via:**

| | |
|---|---|
| **Email to:** | LNP@trinityfs.com |
| **Overnight mail to:** | **Trinity Financial Services, LLC** |
| | **2618 San Miguel Drive, Ste 303** |
| | **Newport Beach, CA 92660** |
| **Fax to:** | **(805) 516-2608** |

**We will contact you within five business days to acknowledge receipt and let you know if you need to send additional information or documents.**

**We will use the information you provided to help us identify the assistance you may be eligible to receive.**

## Information on Avoiding Foreclosure

**Learn more About Options to Avoid Foreclosure**

The variety of options summarized below may help you keep your home. For example, you may be eligible to modify your mortgage, lowering your monthly payment to make it more affordable. Contact us at (855) 818-6806 to determine if you qualify.

Depending on your circumstances, staying in your home may not be possible. In this case, a short sale or deed-in-lieu of foreclosure may be a better choice than foreclosure – see the table below for more information.

Don't delay, as failure to take action may result in foreclosure proceedings being initiated on your mortgage. However, please be aware that we will not initiate foreclosure proceedings where prohibited in those jurisdictions where applicable law has provided additional foreclosure protections for borrowers affected by COVID-19.

| OPTIONS TO STAY IN YOUR HOME | OVERVIEW | BENEFIT |
|---|---|---|
| Reinstatement | Pay the total amount you owe, in a lump sum payment and by a specific date we agree to. This may follow a forbearance plan as described below | Allows you to avoid foreclosure by bringing your mortgage current if you can show you have funds that will become available at a specific date in the future. |
| Repayment Plan | Pay back your past-due payments together with your regular payments over an extended period of time. | Allows you time to catch up on late payments without having to come up with a lump sum. |
| Forbearance Plan | Make reduced mortgage payments or no mortgage payments for a specific period of time. | Gives you time to improve your financial situation and possibly qualify for a better option than would be available right now. |
| Modification | Receive modified mortgage terms to make it more affordable or manageable. | Permanently modifies your mortgage so that your payments or terms are more manageable as a permanent solution to a long-term or permanent hardship. |

| OPTIONS TO LEAVE YOUR HOME | OVERVIEW | BENEFIT |
|---|---|---|
| Short Sale | Sell your home and pay off a portion of your mortgage balance when you owe more on the home than it is worth. | Allows you to transition out of your home without going through foreclosure. In some cases, relocation assistance may be available. |
| Deed-in-Lieu of Foreclosure | Transfer the ownership of your property to us. | Allows you to transition out of your home without going through foreclosure. In some cases, relocation assistance via cash for keys may be available. |

**We Want to Help**

Take action to gain peace of mind and control of your housing situation. Call us at (855) 818-6806 and we'll talk about available options and help you understand the forms and documents we need from you to determine if you qualify for an option to avoid foreclosure.



## LOAN NEGOTIATION & APPLICATION

Dear Borrower:

This letter is in response to your recent inquiry regarding a temporary payment plan, short sale, or settlement agreement regarding the above referenced loan. Please complete this entire package with supporting documentation and forward it to Trinity Financial Services, LLC.

**DO NOT send an incomplete package, or your request will not be considered.**
**No package will be processed until ALL items requested herein are received.**

The documentation you provide will be reviewed and verified. The information obtained will help in assessing your financial situation. Please be advised that submission of this information is not a guarantee that a payment plan or short sale of any kind will be approved.

**Please send this completed package via:**

**Email:**

LNP@trinityfs.com

OR

**Overnight address:**
Trinity Financial Services, LLC
2618 San Miguel Drive, Ste 303
Newport Beach, CA 92660
OR
**Fax:**
(805) 516-2608

*THIS IS AN ATTEMPT TO COLLECT A DEBT. THIS COMMUNICATION IS FROM A DEBT COLLECTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. You have a right to dispute this debt, in part or in full, with Trinity Financial Services, LLC within 30 days. If Trinity Financial Services, LLC does not receive a response from you within 30 days, the debt will be assumed VALID.*



## EXHIBIT A
## Authorization to Release Information

I hereby authorize Trinity Financial Services, LLC and/or any designated agent, assistant, Title Company or its agents to verify any and all information pertaining to the mortgage or property detailed below and any additional financial information pertaining to this property and individual Borrower.

It is understood a photocopy or fax of this form will also serve as authorization.

Property Address: _____

**Current Owner of 1st Mortgage**
Mortgage Company:      _____
Account Number:        _____
Account Opened:        _____
Note Amount:           _____

**Current Owner of 2nd Mortgage**
Mortgage Company:      _____
Account Number:        _____
Account Opened:        _____
Note Amount:           _____

Authorized by:

_____      _____      _____
Borrower Signature           Social Security Number        Date of Birth

_____      _____
Printed Name                 Date



### EXHIBIT B
### Borrower's Statement of Attorney Representation

Currently, a lawsuit has not been filed in your state regarding this issue. Please contact your attorney immediately. If this matter is not resolved, Trinity Financial Services, LLC will pursue this matter by any legal means necessary, including but not limited to, possible foreclosure of the property specified in the mortgage/deed of trust or possible initiation of a lawsuit for personal liability of your debt to Trinity Financial Services, LLC.

You are not required to be represented by an attorney but it is HIGHLY recommended. If you are not represented by an attorney but wish to be, you may contact the American Bar Association for a referral to an attorney in your state. The link to the American Bar Association's referral website is www.FindLegalHelp.org.

❑ I am currently not represented by an attorney. I have been advised that legal representation is recommended but not required. Please contact me directly regarding the negotiation of this loan. I reserve the right to retain an attorney at a future date.

❑ I am currently not represented by an attorney, but I am in the process of obtaining an attorney. I have contacted the American Bar Association and/or have used an attorney referral service. Until an attorney has contacted Trinity Financial Services, LLC please contact me directly.

❑ I am currently represented by an attorney. Their contact information is as follows:

Firm Name: _____

Attorney Name: _____
Address: _____

_____

Phone Number: _____

Fax Number: _____

Email: _____


_____
Borrower Signature


_____          _____
Printed Name                                          Date



## EXHIBIT C
## (OPTIONAL FORM)

      You may contact the U.S. Department of Housing and Urban Development (HUD) for information and assistance in credit counseling.  You may contact a HUD certified credit counselor via their website http://www.hud.gov/offices/hsg/sfh/hcc/fc/ or call (888) 995-HOPE (4673) to immediately speak to an advisor. These credit counseling services are third party services provided by the U.S. Government under the Making Home Affordable program (www.MakingHomeAffordable.gov) and are FREE for you and they will act in YOUR best interest.  Please contact the HUD for more information on credit counseling.

### Borrower's Statement of Credit Counseling

❑  I have received a briefing from a credit counseling agency approved and certified by the U.S. Department of Housing and Urban Development (HUD) and they assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me.  *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.  You must also sign the below Affidavit of Credit Counseling.*

❑  I have received a briefing from a credit counseling agency approved and certified the U.S. Department of Housing and Urban Development (HUD) and they assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me.  *You must sign the below Affidavit of Credit Counseling.*

### Affidavit of Credit Counseling

      I, (Name)_____, received credit counseling from (Name of Credit Counselor) _____, an agency certified and approved by the U.S. Department of Housing and Urban Development (HUD) to provide credit counseling in (State) _____.  I [received/did not receive] a case reference number from the credit counselor [which is #_____].  A debt repayment plan [was/was not] prepared.

      This credit counseling session was conducted via:

❑  Telephone on Date(s)        _____

❑  Mail Correspondence on Date(s)    _____

❑  E-Mail on Date(s)         _____

      The contact information to verify my credit counseling session(s) is as follows:

      Credit Counselor Company Name:    _____

      Credit Counselor Name:       _____

      Credit Counselor Company Address:   _____

      Credit Counselor Company Phone:   _____



I certify that the information provided in this Borrower's Statement of Credit Counseling and Affidavit of Credit Counseling is true and correct. I authorize Trinity Financial Services, LLC to verify this information.

_____

Borrower Signature

_____          _____
Printed Name                                                          Date

*This form was developed by Trinity Financial Services, LLC for internal use.*



**EXHIBIT D**
**Uniform Borrower Assistance Form**

Please complete the following page. Form 710 is a standard form provided by Fannie Mae and Freddie Mac to determine if you are eligible for any government programs. Trinity Financial Services, LLC will NOT apply to government aide on your behalf. Trinity Financial Services, LLC will use the completed form for informational use only. If you are having difficulty in completing this form, please contact a HUD approved credit counselor to assist you. More information can found on Exhibit C regarding contacting a HUD approved credit counselor.



## APPLICATION REQUIREMENTS CHECKLIST

- Sign authorization permitting Trinity to discuss this loan with a third party, if necessary. (Attached as Exhibit A - Must be received with initial application)

- Complete the "Borrower's Statement of Attorney Representation" (Attached as Exhibit B - Optional only if represented by attorney)

- Complete the "Borrower's Statement of Credit Counseling" (Attached as Exhibit C - Optional)

- Complete the "Uniform Borrower Assistance Form" (Cover Page as Exhibit D with Fannie Mae/Freddie Mac Standard Form 710 attached)

- Income Requirements – Household income is required in order to be consider for any type of workout assistance request

- Attach "Required Income Documentation (Tax Returns)" for tax years 2016-2018 – Federal tax returns only, state tax returns are not required.

- Attach "Required Income Documentation (Misc. Documentation)". Please see requirements reference in Page 2 of the Uniform Borrower Assistance Form (Exhibit D).
  - o *Income documentation for **every** source of income in the household is required*
  - o For contribution income submit signed letter of contribution with monthly amount or percentage of income being contributed. All income documents listed below apply to contributors as well.

- Attach "Hardship Affidavit (Letters)". Please see requirements referenced in Page 3 of the Uniform Borrower Assistance Form (Exhibit D)
  - o *Detailed hardship letter is required with hardship description, timeline, confirmation if hardship is still ongoing or if it has ended; attach hardship supporting documents, if applicable*

- Attach most recent Senior Mortgage Statement. Mortgage statement **must** be provided in order for package to be reviewed.
  - o *Senior Lienholder documentation must be dated within 30 days of submission. If Senior servicer is no longer mailing statements, contact servicer to request the most recent statement OR a payoff AND a reinstatement*
  - o If monthly payment for senior lien **does not** include property taxes and insurance, please submit most recent property tax bill AND homeowners insurance declaration page.

- Attach Senior Lienholder Modification Agreement (ALL pages), if account has been modified at any given time during the life of the current existing loan.

- W2 Wage Earners – Attach most recent, consecutive pay stubs (30 days worth).

- Self-Employment - Attach most recent quarterly profit/loss sheet.



- Benefits – If receiving SSI, SSD, Retirement or any other type of benefits, submit recent award letter along with proof of monthly income.

- Child Support, alimony or separate maintenance – NOTICE – Not needed to be revealed if you do not choose to have it considered for modification.

- Business Ownership – Attach business ownership documents (LLC, articles of incorporation, etc…), reflecting owners' names and percentage of ownership.

- Attach the last three (3) most recent, consecutive months of personal and / or business bank statements.
    - *Statements for ALL open checking and savings account are required. Submit ALL pages for every statement, including blank pages or pages with bank writing on them*

- Investments, pension and retirement accounts – Attach a copy of the most recent monthly or quarterly statement for all open accounts, all pages.

- Rental/Investments Properties – Following documents required for every property owned besides subject property.
    - Most recent mortgage statement required for all mortgage accounts related to each property. If senior mortgage payment does not include taxes and insurance, submit most recent property tax bill and homeowners insurance declaration page.
    - Rental/Lease agreement with current dates, along with proof of rental income being received.
    - If any property is vacant, submit proof
    - If any property is going through foreclosure or might be lost in foreclosure, submit supporting documentation

- Detailed household monthly expenses
    - If space provided on UBAF is not sufficient to list all household monthly expenses, submit a detailed breakdown list of expenses on a separate document. This is necessary to fully understand the household monthly budget, accurately.

- Attach most recent Senior Payoff and Reinstatement Statement

- ***FOR SHORT SALE REQUESTS*** Submit estimated HUD-1 with current dates

# EXHIBIT 4

CERTIFICATION OF ENROLLMENT

**SUBSTITUTE HOUSE BILL 2476**

Chapter 30, Laws of 2020

66th Legislature
2020 Regular Session

DEBT BUYERS

EFFECTIVE DATE: June 11, 2020

Passed by the House February 12, 2020
 Yeas 96  Nays 0

_____

LAURIE JINKINS
**Speaker of the House of Representatives**

Passed by the Senate March 3, 2020
 Yeas 48  Nays 0

_____

CYRUS HABIB
**President of the Senate**
Approved March 18, 2020 10:33 AM

CERTIFICATE

I, Bernard Dean, Chief Clerk of the House of Representatives of the State of Washington, do hereby certify that the attached is **SUBSTITUTE HOUSE BILL 2476** as passed by the House of Representatives and the Senate on the dates hereon set forth.

_____

BERNARD DEAN
**Chief Clerk**

FILED

March 18, 2020

_____

JAY INSLEE
**Governor of the State of Washington**

**Secretary of State**
**State of Washington**

### SUBSTITUTE HOUSE BILL 2476

Passed Legislature - 2020 Regular Session

**State of Washington**      **66th Legislature**      **2020 Regular Session**

**By** House Civil Rights & Judiciary (originally sponsored by Representatives Walen, Duerr, Kloba, Kilduff, Leavitt, Lekanoff, Orwall, Davis, Doglio, Frame, Macri, Goodman, and Ormsby)

READ FIRST TIME 01/28/20.

1      AN ACT Relating to debt buyers; amending RCW 19.16.100,
2  19.16.260, 19.16.440, and 19.16.450; and creating a new section.

3  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

4      **Sec. 1.**  RCW 19.16.100 and 2019 c 227 s 3 are each amended to
5  read as follows:
6      Unless a different meaning is plainly required by the context,
7  the following words and phrases as hereinafter used in this chapter
8  shall have the following meanings:
9      (1) "Board" means the Washington state collection agency board.
10      (2) "Claim" means any obligation for the payment of money or
11  thing of value arising out of any agreement or contract, express or
12  implied.
13      (3) "Client" or "customer" means any person authorizing or
14  employing a collection agency to collect a claim.
15      (4) "Collection agency" means and includes:
16      (a) Any person directly or indirectly engaged in soliciting
17  claims for collection, or collecting or attempting to collect claims
18  owed or due or asserted to be owed or due another person;
19      (b) Any person who directly or indirectly furnishes or attempts
20  to furnish, sells, or offers to sell forms represented to be a
21  collection system or scheme intended or calculated to be used to

1  collect claims even though the forms direct the debtor to make
2  payment to the creditor and even though the forms may be or are
3  actually used by the creditor himself or herself in his or her own
4  name;

5      (c) Any person who in attempting to collect or in collecting his
6  or her own claim uses a fictitious name or any name other than his or
7  her own which would indicate to the debtor that a third person is
8  collecting or attempting to collect such claim;

9      (d) ((Any person or entity that is engaged in the business of
10 purchasing delinquent or charged off claims for collection purposes,
11 whether it collects the claims itself or hires a third party for
12 collection or an attorney for litigation in order to collect such
13 claims;)) A debt buyer as defined in this section;

14     (e) Any person or entity attempting to enforce a lien under
15 chapter 60.44 RCW, other than the person or entity originally
16 entitled to the lien.

17     (5) "Collection agency" does not mean and does not include:

18     (a) Any individual engaged in soliciting claims for collection,
19 or collecting or attempting to collect claims on behalf of a licensee
20 under this chapter, if said individual is an employee of the
21 licensee;

22     (b) Any individual collecting or attempting to collect claims for
23 not more than one employer, if all the collection efforts are carried
24 on in the name of the employer and if the individual is an employee
25 of the employer;

26     (c) Any person whose collection activities are carried on in his,
27 her, or its true name and are confined and are directly related to
28 the operation of a business other than that of a collection agency,
29 such as but not limited to: Trust companies; savings and loan
30 associations; building and loan associations; abstract companies
31 doing an escrow business; real estate brokers; property management
32 companies collecting assessments, charges, or fines on behalf of
33 condominium unit owners associations, associations of apartment
34 owners, or homeowners' associations; public officers acting in their
35 official capacities; persons acting under court order; lawyers;
36 insurance companies; credit unions; loan or finance companies;
37 mortgage banks; and banks;

38     (d) Any person who on behalf of another person prepares or mails
39 monthly or periodic statements of accounts due if all payments are

1  made to that other person and no other collection efforts are made by
2  the person preparing the statements of account;
3      (e) An "out-of-state collection agency" as defined in this
4  chapter; or
5      (f) Any person while acting as a debt collector for another
6  person, both of whom are related by common ownership or affiliated by
7  corporate control, if the person acting as a debt collector does so
8  only for persons to whom it is so related or affiliated and if the
9  principal business of the person is not the collection of debts.
10      (6) "Commercial claim" means any obligation for payment of money
11  or thing of value arising out of any agreement or contract, express
12  or implied, where the transaction which is the subject of the
13  agreement or contract is not primarily for personal, family, or
14  household purposes.
15      (7) "Debt buyer" means any person or entity that is engaged in
16  the business of purchasing delinquent or charged off claims for
17  collection purposes, whether it collects the claims itself or hires a
18  third party for collection or an attorney for litigation in order to
19  collect such claims.
20      (8) "Debtor" means any person owing or alleged to owe a claim.
21      (((8))) (9) "Director" means the director of licensing.
22      (((9))) (10) "Licensee" means any person licensed under this
23  chapter.
24      (((10))) (11) "Medical debt" means any obligation for the payment
25  of money arising out of any agreement or contract, express or
26  implied, for the provision of health care services as defined in RCW
27  48.44.010. In the context of "medical debt," "charity care" has the
28  same meaning as provided in RCW 70.170.020.
29      (((11))) (12) "Out-of-state collection agency" means a person
30  whose activities within this state are limited to collecting debts
31  from debtors located in this state by means of interstate
32  communications, including telephone, mail, or facsimile transmission,
33  from the person's location in another state on behalf of clients
34  located outside of this state, but does not include any person who is
35  excluded from the definition of the term "debt collector" under the
36  federal fair debt collection practices act (15 U.S.C. Sec. 1692a(6)).
37      (((12))) (13) "Person" includes individual, firm, partnership,
38  trust, joint venture, association, or corporation.
39      (((13))) (14) "Statement of account" means a report setting forth
40  only amounts billed, invoices, credits allowed, or aged balance due.

1    **Sec. 2.**   RCW 19.16.260 and 2013 c 148 s 3 are each amended to
2    read as follows:
3        (1)(a) No collection agency or out-of-state collection agency may
4    bring or maintain an action in any court of this state involving the
5    collection of its own claim or a claim of any third party without
6    alleging and proving that he, she, or it is duly licensed under this
7    chapter and has satisfied the bonding requirements hereof, if
8    applicable: PROVIDED, That in any case where judgment is to be
9    entered by default, it shall not be necessary for the collection
10   agency or out-of-state collection agency to prove such matters.
11       (b) A copy of the current collection agency license or out-of-
12   state collection agency license, certified by the director to be a
13   true and correct copy of the original, shall be prima facie evidence
14   of the licensing and bonding of such collection agency or out-of-
15   state collection agency as required by this chapter.
16       (2) No debt buyer may:
17       (a) Bring any legal action against a debtor without attaching to
18   the complaint a copy of the contract or other writing evidencing the
19   original debt that contains the signature of the debtor, or:
20       (i) If a claim is based on a credit card debt for which a signed
21   writing evidencing the original debt does not exist, a copy of the
22   most recent monthly statement recording a purchase transaction,
23   payment, or other extension of credit and, if the claim is based on a
24   breach of contract, a copy of the terms and conditions in place at
25   the time of the most recent monthly statement recording a purchase
26   transaction, payment, or extension of credit must also be attached;
27   or
28       (ii) If a claim is based on an electronic transaction for which a
29   signed writing evidencing the original debt never existed, a copy of
30   the records created during the transaction evidencing the debtor's
31   agreement to the debt and recording the date and terms of the
32   transaction and information provided by the debtor during the
33   transaction.
34       (b) Request a default judgment against a debtor in any legal
35   action without providing to the court evidence that satisfies the
36   requirements of rule 803(a)(6) of the rules of evidence and RCW
37   5.45.020 or is otherwise authorized by law or rule that establishes
38   the amount and nature of the debt, including the documents required
39   by (a) of this subsection, and:
40       (i) The original account number at charge-off;

1    (ii) The original creditor at charge-off;

2    (iii) The amount due at charge-off or, if the balance has not
3    been charged off, an itemization of the amount claimed to be owed,
4    including the principal, interest, fees, and other charges or
5    reductions from payment made or other credits;

6    (iv) An itemization of post charge-off additions, if any;

7    (v) The date of the last payment, if applicable, or the date of
8    the last transaction;

9    (vi) If the account is not a revolving credit account, the date
10   the debt was incurred; and

11   (vii) A copy of the assignment or other writing establishing that
12   the debt buyer is the owner of the debt. If the debt was assigned
13   more than once, each assignment or other writing evidencing transfer
14   of ownership must be attached to establish an unbroken chain of
15   ownership, beginning with the original creditor to the first debt
16   buyer and each subsequent sale.

17   (c) Bring any legal action against a debtor without providing a
18   disclosure in the complaint, in no smaller than ten point type,
19   stating each of the following:

20   (i) That the action is being brought by, or for the benefit of, a
21   person or entity that is engaged in the business of purchasing
22   delinquent or charged off claims for collection purposes;

23   (ii) The date the claim or obligation was purchased;

24   (iii) The identity of the person or entity from whom or which the
25   claim or obligation was purchased;

26   (iv) That the plaintiff may have purchased this claim or
27   obligation for less than the value stated in the complaint;

28   (v) If the claim or obligation was at any time sold without any
29   representation or warranty of accuracy, a statement to that effect;
30   and

31   (vi) That the action is being commenced within, and is not barred
32   by, an applicable statute of limitations.

33   **Sec. 3.**   RCW 19.16.440 and 1994 c 195 s 11 are each amended to
34   read as follows:

35   The operation of a collection agency or out-of-state collection
36   agency without a license as prohibited by RCW 19.16.110 and the
37   commission by a licensee or an employee of a licensee of an act or
38   practice prohibited by RCW 19.16.250 or 19.16.260 are declared to be
39   unfair acts or practices or unfair methods of competition in the

1  conduct of trade or commerce for the purpose of the application of
2  the ((Consumer Protection Act)) <u>consumer protection act</u> found in
3  chapter 19.86 RCW.

4      **Sec. 4.**  RCW 19.16.450 and 1971 ex.s. c 253 s 36 are each amended
5  to read as follows:
6      If an act or practice in violation of RCW 19.16.250 <u>or 19.16.260</u>
7  is committed by a licensee or an employee of a licensee in the
8  collection of a claim, neither the licensee, the customer of the
9  licensee, nor any other person who may thereafter legally seek to
10 collect on such claim shall ever be allowed to recover any interest,
11 service charge, attorneys' fees, collection costs, delinquency
12 charge, or any other fees or charges otherwise legally chargeable to
13 the debtor on such claim: PROVIDED, That any person asserting the
14 claim may nevertheless recover from the debtor the amount of the
15 original claim or obligation.

16     <u>NEW SECTION.</u>  **Sec. 5.**  This act applies prospectively only and
17 not retroactively. It applies with respect to delinquent or charged
18 off claims purchased for collection purposes by a debt buyer on or
19 after the effective date of this section.

        Passed by the House February 12, 2020.
        Passed by the Senate March 3, 2020.
        Approved by the Governor March 18, 2020.
        Filed in Office of Secretary of State March 18, 2020.

                    **--- END ---**

# EXHIBIT 5

(b) Grant exemptions from the requirements for the filing of annual registration statements with the office to charitable organizations organized under the laws of another state having their principal place of business outside this state whose funds are derived principally from sources outside this state and that have been exempted from the filing of registration statements by the statute under whose laws they are organized if such a state has a statute similar in substance to this chapter.

(3) The secretary may adopt rules relating to reciprocal agreements consistent with this section.  [2007 c 471 § 17.]

**19.09.912  Effective date—1983 c 265.**  With the exception of section 19 of this act, this act shall take effect January 1, 1984.  [1983 c 265 § 21.]

**Reviser's note:** "Section 19 of this act" is an uncodified appropriation section.

**19.09.913  Effective date—1986 c 230.**  This act shall take effect on January 1, 1987.  [1986 c 230 § 21.]

**19.09.915  Effective date—1993 c 471.**  This act is necessary for the immediate preservation of the public peace, health, or safety, or support of the state government and its existing public institutions, and shall take effect July 1, 1993.  [1993 c 471 § 44.]

**19.09.916  Construction—Chapter applicable to state registered domestic partnerships—2009 c 521.**  For the purposes of this chapter, the terms spouse, marriage, marital, husband, wife, widow, widower, next of kin, and family shall be interpreted as applying equally to state registered domestic partnerships or individuals in state registered domestic partnerships as well as to marital relationships and married persons, and references to dissolution of marriage shall apply equally to state registered domestic partnerships that have been terminated, dissolved, or invalidated, to the extent that such interpretation does not conflict with federal law. Where necessary to implement chapter 521, Laws of 2009, gender-specific terms such as husband and wife used in any statute, rule, or other law shall be construed to be gender neutral, and applicable to individuals in state registered domestic partnerships.  [2009 c 521 § 51.]

## Chapter 19.16 RCW
## COLLECTION AGENCIES

Sections

| | |
|---|---|
| 19.16.100 | Definitions. |
| 19.16.110 | License required. |
| 19.16.120 | Unprofessional conduct—Support order, noncompliance. |
| 19.16.130 | License—Application—Form—Contents. |
| 19.16.140 | License—Application—Fees—Exemptions. |
| 19.16.150 | Branch office certificate required. |
| 19.16.160 | License and branch office certificate—Form—Contents—Display. |
| 19.16.170 | Procedure upon change of name or business location. |
| 19.16.180 | Assignability of license or branch office certificate. |
| 19.16.190 | Surety bond requirements—Cash deposit or securities—Exception. |
| 19.16.200 | Action on bond, cash deposit or securities. |
| 19.16.210 | Accounting and payments by licensee to customer. |
| 19.16.220 | Accounting and payments by customer to licensee. |
| 19.16.230 | Licensee—Business office—Records to be kept. |
| 19.16.240 | Licensee—Trust fund account—Exception. |
| 19.16.245 | Financial statement. |
| 19.16.250 | Prohibited practices. |
| 19.16.260 | Licensing prerequisite to suit. |
| 19.16.270 | Presumption of validity of assignment. |
| 19.16.280 | Board created—Composition of board—Qualification of members. |
| 19.16.290 | Board—Initial members—Terms—Oath—Removal. |
| 19.16.300 | Board meetings—Quorum—Effect of vacancy. |
| 19.16.310 | Board—Compensation—Reimbursement of travel expenses. |
| 19.16.320 | Board—Territorial scope of operations. |
| 19.16.330 | Board—Immunity from suit. |
| 19.16.340 | Board—Records. |
| 19.16.351 | Additional powers and duties of board. |
| 19.16.390 | Personal service of process outside state. |
| 19.16.410 | Rules, orders, decisions, etc. |
| 19.16.420 | Copy of this chapter, rules and regulations available to licensee. |
| 19.16.430 | Violations—Operating agency without a license—Penalty—Return of fees or compensation. |
| 19.16.440 | Violations of RCW 19.16.110 and 19.16.250 are unfair and deceptive trade practices under chapter 19.86 RCW. |
| 19.16.450 | Violation of RCW 19.16.250—Additional penalty. |
| 19.16.460 | Violations may be enjoined. |
| 19.16.470 | Violations—Assurance of discontinuance—Effect. |
| 19.16.480 | Violation of injunction—Civil penalty. |
| 19.16.500 | Public bodies may retain collection agencies to collect public debts—Fees. |
| 19.16.510 | Uniform regulation of business and professions act. |
| 19.16.900 | Provisions cumulative—Violation of RCW 19.16.250 deemed civil. |
| 19.16.920 | Provisions exclusive—Authority of political subdivisions to levy business and occupation taxes not affected. |
| 19.16.930 | Effective date—1971 ex.s. c 253. |
| 19.16.940 | Short title. |
| 19.16.950 | Section headings. |
| 19.16.960 | Construction—Chapter applicable to state registered domestic partnerships—2009 c 521. |

**19.16.100  Definitions.**  Unless a different meaning is plainly required by the context, the following words and phrases as hereinafter used in this chapter shall have the following meanings:

(1) "Board" means the Washington state collection agency board.

(2) "Claim" means any obligation for the payment of money or thing of value arising out of any agreement or contract, express or implied.

(3) "Client" or "customer" means any person authorizing or employing a collection agency to collect a claim.

(4) "Collection agency" means and includes:

(a) Any person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person;

(b) Any person who directly or indirectly furnishes or attempts to furnish, sells, or offers to sell forms represented to be a collection system or scheme intended or calculated to be used to collect claims even though the forms direct the debtor to make payment to the creditor and even though the forms may be or are actually used by the creditor himself or herself in his or her own name;

(c) Any person who in attempting to collect or in collecting his or her own claim uses a fictitious name or any name other than his or her own which would indicate to the debtor that a third person is collecting or attempting to collect such claim;

(d) Any person or entity that is engaged in the business of purchasing delinquent or charged off claims for collection purposes, whether it collects the claims itself or hires a third party for collection or an attorney for litigation in order to collect such claims;

(e) Any person or entity attempting to enforce a lien under chapter 60.44 RCW, other than the person or entity originally entitled to the lien.

(5) "Collection agency" does not mean and does not include:

(a) Any individual engaged in soliciting claims for collection, or collecting or attempting to collect claims on behalf of a licensee under this chapter, if said individual is an employee of the licensee;

(b) Any individual collecting or attempting to collect claims for not more than one employer, if all the collection efforts are carried on in the name of the employer and if the individual is an employee of the employer;

(c) Any person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as but not limited to: Trust companies; savings and loan associations; building and loan associations; abstract companies doing an escrow business; real estate brokers; property management companies collecting assessments, charges, or fines on behalf of condominium unit owners associations, associations of apartment owners, or homeowners' associations; public officers acting in their official capacities; persons acting under court order; lawyers; insurance companies; credit unions; loan or finance companies; mortgage banks; and banks;

(d) Any person who on behalf of another person prepares or mails monthly or periodic statements of accounts due if all payments are made to that other person and no other collection efforts are made by the person preparing the statements of account;

(e) An "out-of-state collection agency" as defined in this chapter; or

(f) Any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of the person is not the collection of debts.

(6) "Commercial claim" means any obligation for payment of money or thing of value arising out of any agreement or contract, express or implied, where the transaction which is the subject of the agreement or contract is not primarily for personal, family, or household purposes.

(7) "Debtor" means any person owing or alleged to owe a claim.

(8) "Director" means the director of licensing.

(9) "Licensee" means any person licensed under this chapter.

(10) "Medical debt" means any obligation for the payment of money arising out of any agreement or contract, express or implied, for the provision of health care services as defined in RCW 48.44.010. In the context of "medical debt," "charity care" has the same meaning as provided in RCW 70.170.020.

(11) "Out-of-state collection agency" means a person whose activities within this state are limited to collecting debts from debtors located in this state by means of interstate communications, including telephone, mail, or facsimile transmission, from the person's location in another state on behalf of clients located outside of this state, but does not include any person who is excluded from the definition of the term "debt collector" under the federal fair debt collection practices act (15 U.S.C. Sec. 1692a(6)).

(12) "Person" includes individual, firm, partnership, trust, joint venture, association, or corporation.

(13) "Statement of account" means a report setting forth only amounts billed, invoices, credits allowed, or aged balance due.  [2019 c 227 § 3; 2015 c 201 § 3. Prior: 2013 c 148 § 1; 2003 c 203 § 1; prior: 2001 c 47 § 1; 2001 c 43 § 1; 1994 c 195 § 1; 1990 c 190 § 1; 1979 c 158 § 81; 1971 ex.s. c 253 § 1.]

**Effective date—2013 c 148 §§ 1 and 3:** "Sections 1 and 3 of this act take effect October 1, 2013." [2013 c 148 § 4.]

**19.16.110   License required.**  No person shall act, assume to act, or advertise as a collection agency or out-of-state collection agency as defined in this chapter, except as authorized by this chapter, without first having applied for and obtained a license from the director.

Nothing contained in this section shall be construed to require a regular employee of a collection agency or out-of-state collection agency duly licensed under this chapter to procure a collection agency license.  [1994 c 195 § 2; 1971 ex.s. c 253 § 2.]

**19.16.120   Unprofessional conduct—Support order, noncompliance.**  In addition to other provisions of this chapter, and the unprofessional conduct described in RCW 18.235.130, the following conduct, acts, or conditions constitute unprofessional conduct:

(1) If an individual applicant or licensee is less than eighteen years of age or is not a resident of this state.

(2) If an applicant or licensee is not authorized to do business in this state.

(3) If the application or renewal forms required by this chapter are incomplete, fees required under RCW 19.16.140 and 19.16.150, if applicable, have not been paid, and the surety bond or cash deposit or other negotiable security acceptable to the director required by RCW 19.16.190, if applicable, has not been filed or renewed or is canceled.

(4) If any individual applicant, owner, officer, director, or managing employee of a nonindividual applicant or licensee:

(a) Has had any judgment entered against him or her in any civil action involving forgery, embezzlement, obtaining money under false pretenses, larceny, extortion, or conspiracy to defraud and five years have not elapsed since the date of the entry of the final judgment in said action: PROVIDED, That in no event shall a license be issued unless the judgment debt has been discharged;

(b) Has had his or her license to practice law suspended or revoked and two years have not elapsed since the date of such suspension or revocation, unless he or she has been relicensed to practice law in this state;

(c) Has had any judgment entered against such a person under the provisions of RCW 19.86.080 or 19.86.090 involving a violation or violations of RCW 19.86.020 and two years have not elapsed since the entry of the final judgment: PROVIDED, That in no event shall a license be issued unless the terms of such judgment, if any, have been fully complied with: PROVIDED FURTHER, That said judgment shall not

# EXHIBIT 6

CERTIFICATION OF ENROLLMENT

**SUBSTITUTE HOUSE BILL 1822**

Chapter 148, Laws of 2013

63rd Legislature
2013 Regular Session

DEBT COLLECTION PRACTICES

EFFECTIVE DATE: 07/28/13 - Except sections 1 and 3, which become
effective 10/01/13.

Passed by the House March 9, 2013
  Yeas 97  Nays 0

           FRANK CHOPP
**Speaker of the House of Representatives**

Passed by the Senate April 17, 2013
  Yeas 48  Nays 0

           BRAD OWEN
**President of the Senate**

Approved May 7, 2013, 2:05 p.m.

           JAY INSLEE
**Governor of the State of Washington**

CERTIFICATE

I, Barbara Baker, Chief Clerk of
the House of Representatives of
the State of Washington, do hereby
certify that the attached is
**SUBSTITUTE HOUSE BILL 1822** as
passed by the House of
Representatives and the Senate on
the dates hereon set forth.

           BARBARA BAKER

           **Chief Clerk**

           FILED

           May 7, 2013

           **Secretary of State**
           **State of Washington**

---

### SUBSTITUTE HOUSE BILL 1822

---

Passed Legislature - 2013 Regular Session

**State of Washington          63rd Legislature          2013 Regular Session**

**By** House Judiciary (originally sponsored by Representative Stanford)

READ FIRST TIME 02/22/13.

1    AN ACT Relating to debt collection practices; amending RCW
2  19.16.100, 19.16.250, and 19.16.260; and providing an effective date.

3  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

4    **Sec. 1.**  RCW 19.16.100 and 2003 c 203 s 1 are each amended to read
5  as follows:
6    Unless a different meaning is plainly required by the context, the
7  following words and phrases as hereinafter used in this chapter shall
8  have the following meanings:
9    (1) "Person" includes individual, firm, partnership, trust, joint
10 venture, association, or corporation.
11    (2) "Collection agency" means and includes:
12    (a) Any person directly or indirectly engaged in soliciting claims
13 for collection, or collecting or attempting to collect claims owed or
14 due or asserted to be owed or due another person;
15    (b) Any person who directly or indirectly furnishes or attempts to
16 furnish, sells, or offers to sell forms represented to be a collection
17 system or scheme intended or calculated to be used to collect claims
18 even though the forms direct the debtor to make payment to the creditor

1  and even though the forms may be or are actually used by the creditor
2  himself or herself in his or her own name;

3  (c) Any person who in attempting to collect or in collecting his or
4  her own claim uses a fictitious name or any name other than his or her
5  own which would indicate to the debtor that a third person is
6  collecting or attempting to collect such claim;

7  (d) Any person or entity that is engaged in the business of
8  purchasing delinquent or charged off claims for collection purposes,
9  whether it collects the claims itself or hires a third party for
10  collection or an attorney for litigation in order to collect such
11  claims.

12  (3) "Collection agency" does not mean and does not include:

13  (a) Any individual engaged in soliciting claims for collection, or
14  collecting or attempting to collect claims on behalf of a licensee
15  under this chapter, if said individual is an employee of the licensee;

16  (b) Any individual collecting or attempting to collect claims for
17  not more than one employer, if all the collection efforts are carried
18  on in the name of the employer and if the individual is an employee of
19  the employer;

20  (c) Any person whose collection activities are carried on in his,
21  her, or its true name and are confined and are directly related to the
22  operation of a business other than that of a collection agency, such as
23  but not limited to:  Trust companies; savings and loan associations;
24  building and loan associations; abstract companies doing an escrow
25  business; real estate brokers; property management companies collecting
26  assessments, charges, or fines on behalf of condominium unit owners
27  associations, associations of apartment owners, or homeowners'
28  associations; public officers acting in their official capacities;
29  persons acting under court order; lawyers; insurance companies; credit
30  unions; loan or finance companies; mortgage banks; and banks;

31  (d) Any person who on behalf of another person prepares or mails
32  monthly or periodic statements of accounts due if all payments are made
33  to that other person and no other collection efforts are made by the
34  person preparing the statements of account;

35  (e) An "out-of-state collection agency" as defined in this chapter;
36  or

37  (f) Any person while acting as a debt collector for another person,
38  both of whom are related by common ownership or affiliated by corporate

1    control, if the person acting as a debt collector does so only for
2    persons to whom it is so related or affiliated and if the principal
3    business of the person is not the collection of debts.
4        (4) "Out-of-state collection agency" means a person whose
5    activities within this state are limited to collecting debts from
6    debtors located in this state by means of interstate communications,
7    including telephone, mail, or facsimile transmission, from the person's
8    location in another state on behalf of clients located outside of this
9    state, but does not include any person who is excluded from the
10   definition of the term "debt collector" under the federal fair debt
11   collection practices act (15 U.S.C. Sec. 1692a(6)).
12       (5) "Claim" means any obligation for the payment of money or thing
13   of value arising out of any agreement or contract, express or implied.
14       (6) "Statement of account" means a report setting forth only
15   amounts billed, invoices, credits allowed, or aged balance due.
16       (7) "Director" means the director of licensing.
17       (8) "Client" or "customer" means any person authorizing or
18   employing a collection agency to collect a claim.
19       (9) "Licensee" means any person licensed under this chapter.
20       (10) "Board" means the Washington state collection agency board.
21       (11) "Debtor" means any person owing or alleged to owe a claim.
22       (12) "Commercial claim" means any obligation for payment of money
23   or thing of value arising out of any agreement or contract, express or
24   implied, where the transaction which is the subject of the agreement or
25   contract is not primarily for personal, family, or household purposes.

26       **Sec. 2.**  RCW 19.16.250 and 2011 1st sp.s. c 29 s 2 are each amended
27   to read as follows:
28       No licensee or employee of a licensee shall:
29       (1) Directly or indirectly aid or abet any unlicensed person to
30   engage in business as a collection agency in this state or receive
31   compensation from such unlicensed person:  PROVIDED, That nothing in
32   this chapter shall prevent a licensee from accepting, as forwardee,
33   claims for collection from a collection agency or attorney whose place
34   of business is outside the state.
35       (2) Collect or attempt to collect a claim by the use of any means
36   contrary to the postal laws and regulations of the United States postal
37   department.

1    (3) Publish or post or cause to be published or posted, any list of
2    debtors commonly known as "bad debt lists" or threaten to do so.  For
3    purposes of this chapter, a "bad debt list" means any list of natural
4    persons alleged to fail to honor their lawful debts.  However, nothing
5    herein shall be construed to prohibit a licensee from communicating to
6    its customers or clients by means of a coded list, the existence of a
7    check dishonored because of insufficient funds, not sufficient funds or
8    closed account by the financial institution servicing the debtor's
9    checking account:  PROVIDED, That the debtor's identity is not readily
10   apparent:  PROVIDED FURTHER, That the licensee complies with the
11   requirements of subsection (10)(e) of this section.

12   (4) Have in his or her possession or make use of any badge, use a
13   uniform of any law enforcement agency or any simulation thereof, or
14   make any statements which might be construed as indicating an official
15   connection with any federal, state, county, or city law enforcement
16   agency, or any other governmental agency, while engaged in collection
17   agency business.

18   (5) Perform any act or acts, either directly or indirectly,
19   constituting the <u>unauthorized</u> practice of law.

20   (6) Advertise for sale or threaten to advertise for sale any claim
21   as a means of endeavoring to enforce payment thereof or agreeing to do
22   so for the purpose of soliciting claims, except where the licensee has
23   acquired claims as an assignee for the benefit of creditors or where
24   the licensee is acting under court order.

25   (7) Use any name while engaged in the making of a demand for any
26   claim other than the name set forth on his or her or its current
27   license issued hereunder.

28   (8) Give or send to any debtor or cause to be given or sent to any
29   debtor, any notice, letter, message, or form, other than through proper
30   legal action, process, or proceedings, which represents or implies that
31   a claim exists unless it shall indicate in clear and legible type:

32   (a) The name of the licensee and the city, street, and number at
33   which he or she is licensed to do business;

34   (b) The name of the original creditor to whom the debtor owed the
35   claim if such name is known to the licensee or employee:  PROVIDED,
36   That upon written request of the debtor, the licensee shall provide
37   this name to the debtor or cease efforts to collect on the debt until
38   this information is provided;

1    (c) If the notice, letter, message, or form is the first notice to
2    the debtor or if the licensee is attempting to collect a different
3    amount than indicated in his or her or its first notice to the debtor,
4    an itemization of the claim asserted must be made including:

5    (i) Amount owing on the original obligation at the time it was
6    received by the licensee for collection or by assignment;

7    (ii) Interest or service charge, collection costs, or late payment
8    charges, if any, added to the original obligation by the original
9    creditor, customer or assignor before it was received by the licensee
10   for collection, if such information is known by the licensee or
11   employee:  PROVIDED, That upon written request of the debtor, the
12   licensee shall make a reasonable effort to obtain information on such
13   items and provide this information to the debtor;

14   (iii) Interest or service charge, if any, added by the licensee or
15   customer or assignor after the obligation was received by the licensee
16   for collection;

17   (iv) Collection costs, if any, that the licensee is attempting to
18   collect;

19   (v) Attorneys' fees, if any, that the licensee is attempting to
20   collect on his or her or its behalf or on the behalf of a customer or
21   assignor; and

22   (vi) Any other charge or fee that the licensee is attempting to
23   collect on his or her or its own behalf or on the behalf of a customer
24   or assignor;

25   (d) If the notice, letter, message, or form concerns a judgment
26   obtained against the debtor, no itemization of the amounts contained in
27   the judgment is required, except postjudgment interest, if claimed, and
28   the current account balance;

29   (e) If the notice, letter, message, or form is the first notice to
30   the debtor, an itemization of the claim asserted must be made including
31   the following information:

32   (i) The original account number or redacted original account number
33   assigned to the debt, if known to the licensee or employee:  PROVIDED,
34   That upon written request of the debtor, the licensee must make a
35   reasonable effort to obtain this information or cease efforts to
36   collect on the debt until this information is provided; and

37   (ii) The date of the last payment to the creditor on the subject
38   debt by the debtor, if known to the licensee or employee:  PROVIDED,

1    That upon written request of the debtor, the licensee must make a
2    reasonable effort to obtain this information or cease efforts to
3    collect on the debt until this information is provided.

4       (9) Communicate in writing with a debtor concerning a claim through
5    a proper legal action, process, or proceeding, where such communication
6    is the first written communication with the debtor, without providing
7    the information set forth in subsection (8)(c) of this section in the
8    written communication.

9       (10) Communicate or threaten to communicate, the existence of a
10   claim to a person other than one who might be reasonably expected to be
11   liable on the claim in any manner other than through proper legal
12   action, process, or proceedings except under the following conditions:

13      (a) A licensee or employee of a licensee may inform a credit
14   reporting bureau of the existence of a claim.  If the licensee or
15   employee of a licensee reports a claim to a credit reporting bureau,
16   the licensee shall, upon receipt of written notice from the debtor that
17   any part of the claim is disputed, notify the credit reporting bureau
18   of the dispute by written or electronic means and create a record of
19   the fact of the notification and when the notification was provided;

20      (b) A licensee or employee in collecting or attempting to collect
21   a claim may communicate the existence of a claim to a debtor's employer
22   if the claim has been reduced to a judgment;

23      (c) A licensee or employee in collecting or attempting to collect
24   a claim that has not been reduced to judgment, may communicate the
25   existence of a claim to a debtor's employer if:

26      (i) The licensee or employee has notified or attempted to notify
27   the debtor in writing at his or her last known address or place of
28   employment concerning the claim and the debtor after a reasonable time
29   has failed to pay the claim or has failed to agree to make payments on
30   the claim in a manner acceptable to the licensee, and

31      (ii) The debtor has not in writing to the licensee disputed any
32   part of the claim:  PROVIDED, That the licensee or employee may only
33   communicate the existence of a claim which has not been reduced to
34   judgment to the debtor's employer once unless the debtor's employer has
35   agreed to additional communications.

36      (d) A licensee may for the purpose of locating the debtor or
37   locating assets of the debtor communicate the existence of a claim to

1    any person who might reasonably be expected to have knowledge of the
2    whereabouts of a debtor or the location of assets of the debtor if the
3    claim is reduced to judgment, or if not reduced to judgment, when:

4        (i) The licensee or employee has notified or attempted to notify
5    the debtor in writing at his or her last known address or last known
6    place of employment concerning the claim and the debtor after a
7    reasonable time has failed to pay the claim or has failed to agree to
8    make payments on the claim in a manner acceptable to the licensee, and

9        (ii) The debtor has not in writing disputed any part of the claim.

10       (e) A licensee may communicate the existence of a claim to its
11   customers or clients if the claim is reduced to judgment, or if not
12   reduced to judgment, when:

13       (i) The licensee has notified or attempted to notify the debtor in
14   writing at his or her last known address or last known place of
15   employment concerning the claim and the debtor after a reasonable time
16   has failed to pay the claim or has failed to agree to make payments on
17   the claim in a manner acceptable to the licensee, and

18       (ii) The debtor has not in writing disputed any part of the claim.

19       (11) Threaten the debtor with impairment of his or her credit
20   rating if a claim is not paid:  PROVIDED, That advising a debtor that
21   the licensee has reported or intends to report a claim to a credit
22   reporting agency is not considered a threat if the licensee actually
23   has reported or intends to report the claim to a credit reporting
24   agency.

25       (12) Communicate with the debtor after notification in writing from
26   an attorney representing such debtor that all further communications
27   relative to a claim should be addressed to the attorney:  PROVIDED,
28   That if a licensee requests in writing information from an attorney
29   regarding such claim and the attorney does not respond within a
30   reasonable time, the licensee may communicate directly with the debtor
31   until he or she or it again receives notification in writing that an
32   attorney is representing the debtor.

33       (13) Communicate with a debtor or anyone else in such a manner as
34   to harass, intimidate, threaten, or embarrass a debtor, including but
35   not limited to communication at an unreasonable hour, with unreasonable
36   frequency, by threats of force or violence, by threats of criminal
37   prosecution, and by use of offensive language.  A communication shall
38   be presumed to have been made for the purposes of harassment if:

1    (a) It is made with a debtor or spouse in any form, manner, or
2    place, more than three times in a single week, unless the licensee is
3    responding to a communication from the debtor or spouse;

4    (b) It is made with a debtor at his or her place of employment more
5    than one time in a single week, unless the licensee is responding to a
6    communication from the debtor;

7    (c) It is made with the debtor or spouse at his or her place of
8    residence between the hours of 9:00 p.m. and 7:30 a.m.  A call to a
9    telephone is presumed to be received in the local time zone to which
10   the area code of the number called is assigned for landline numbers,
11   unless the licensee reasonably believes the telephone is located in a
12   different time zone.  If the area code is not assigned to landlines in
13   any specific geographic area, such as with toll-free telephone numbers,
14   a call to a telephone is presumed to be received in the local time zone
15   of the debtor's last known place of residence, unless the licensee
16   reasonably believes the telephone is located in a different time zone.

17   (14) Communicate with the debtor through use of forms or
18   instruments that simulate the form or appearance of judicial process,
19   the form or appearance of government documents, or the simulation of a
20   form or appearance of a telegraphic or emergency message.

21   (15) Communicate with the debtor and represent or imply that the
22   existing obligation of the debtor may be or has been increased by the
23   addition of attorney fees, investigation fees, service fees, or any
24   other fees or charges when in fact such fees or charges may not legally
25   be added to the existing obligation of such debtor.

26   (16) Threaten to take any action against the debtor which the
27   licensee cannot legally take at the time the threat is made.

28   (17) Send any telegram or make any telephone calls to a debtor or
29   concerning a debt or for the purpose of demanding payment of a claim or
30   seeking information about a debtor, for which the charges are payable
31   by the addressee or by the person to whom the call is made:  PROVIDED,
32   That:

33   (a) This subsection does not prohibit a licensee from attempting to
34   communicate by way of a cellular telephone or other wireless device:
35   PROVIDED, That a licensee cannot cause charges to be incurred to the
36   recipient of the attempted communication more than three times in any
37   calendar week when the licensee knows or reasonably should know that

1    the number belongs to a cellular telephone or other wireless device,
2    unless the licensee is responding to a communication from the debtor or
3    the person to whom the call is made.

4        (b) The licensee is not in violation of (a) of this subsection if
5    the licensee at least monthly updates its records with information
6    provided by a commercial provider of cellular telephone lists that the
7    licensee in good faith believes provides reasonably current and
8    comprehensive data identifying cellular telephone numbers, calls a
9    number not appearing in the most recent list provided by the commercial
10   provider, and does not otherwise know or reasonably should know that
11   the number belongs to a cellular telephone.

12       (c) This subsection may not be construed to increase the number of
13   communications permitted pursuant to subsection (13)(a) of this
14   section.

15       (18) Call, or send a text message or other electronic communication
16   to, a cellular telephone or other wireless device more than twice in
17   any day when the licensee knows or reasonably should know that the
18   number belongs to a cellular telephone or other wireless device, unless
19   the licensee is responding to a communication from the debtor or the
20   person to whom the call, text message, or other electronic
21   communication is made.  The licensee is not in violation of this
22   subsection if the licensee at least monthly updates its records with
23   information provided by a commercial provider of cellular telephone
24   lists that the licensee in good faith believes provides reasonably
25   current and comprehensive data identifying cellular telephone numbers,
26   calls a number not appearing in the most recent list provided by the
27   commercial provider, and does not otherwise know or reasonably should
28   know that the number belongs to a cellular telephone.  Nothing in this
29   subsection may be construed to increase the number of communications
30   permitted pursuant to subsection (13)(a) of this section.

31       (19) Intentionally block its telephone number from displaying on a
32   debtor's telephone.

33       (20) In any manner convey the impression that the licensee is
34   vouched for, bonded to or by, or is an instrumentality of the state of
35   Washington or any agency or department thereof.

36       (21) Collect or attempt to collect in addition to the principal
37   amount of a claim any sum other than allowable interest, collection
38   costs or handling fees expressly authorized by statute, and, in the

1  case of suit, attorney's fees and taxable court costs.  A licensee may
2  collect or attempt to collect collection costs and fees, including
3  contingent collection fees, as authorized by a written agreement or
4  contract, between the licensee's client and the debtor, in the
5  collection of a commercial claim.  The amount charged to the debtor for
6  collection services shall not exceed thirty-five percent of the
7  commercial claim.
8      (22) Procure from a debtor or collect or attempt to collect on any
9  written note, contract, stipulation, promise or acknowledgment under
10  which a debtor may be required to pay any sum other than principal,
11  allowable interest, except as noted in subsection (21) of this section,
12  and, in the case of suit, attorney's fees and taxable court costs.
13      (23) Bring an action or initiate an arbitration proceeding on a
14  claim when the licensee knows, or reasonably should know, that such
15  suit or arbitration is barred by the applicable statute of limitations.
16      (24) Upon notification by a debtor that the debtor disputes all
17  debts arising from a series of dishonored checks, automated
18  clearinghouse transactions on a demand deposit account, or other
19  preprinted written instruments, initiate oral contact with a debtor
20  more than one time in an attempt to collect from the debtor debts
21  arising from the identified series of dishonored checks, automated
22  clearinghouse transactions on a demand deposit account, or other
23  preprinted written instruments when:  (a) Within the previous one
24  hundred eighty days, in response to the licensee's attempt to collect
25  the initial debt assigned to the licensee and arising from the
26  identified series of dishonored checks, automated clearinghouse
27  transactions on a demand deposit account, or other preprinted written
28  instruments, the debtor in writing notified the licensee that the
29  debtor's checkbook or other series of preprinted written instruments
30  was stolen or fraudulently created; (b) the licensee has received from
31  the debtor a certified copy of a police report referencing the theft or
32  fraudulent creation of the checkbook, automated clearinghouse
33  transactions on a demand deposit account, or series of preprinted
34  written instruments; (c) in the written notification to the licensee or
35  in the police report, the debtor identified the financial institution
36  where the account was maintained, the account number, the magnetic ink
37  character recognition number, the full bank routing and transit number,
38  and the check numbers of the stolen checks, automated clearinghouse

1    transactions on a demand deposit account, or other preprinted written
2    instruments, which check numbers included the number of the check that
3    is the subject of the licensee's collection efforts; (d) the debtor
4    provides, or within the previous one hundred eighty days provided, to
5    the  licensee  a  legible  copy  of  a  government-issued  photo
6    identification, which contains the debtor's signature and which was
7    issued prior to the date of the theft or fraud identified in the police
8    report; and (e) the debtor advised the licensee that the subject debt
9    is  disputed  because  the  identified  check,  automated  clearinghouse
10   transaction on a demand deposit account, or other preprinted written
11   instrument  underlying  the  debt  is  a  stolen  or  fraudulently  created
12   check or instrument.

13       The licensee is not in violation of this subsection if the licensee
14   initiates oral contact with the debtor more than one time in an attempt
15   to  collect  debts  arising  from  the  identified  series  of  dishonored
16   checks,  automated  clearinghouse  transactions  on  a  demand  deposit
17   account,  or  other  preprinted  written  instruments  when:  (i)  The
18   licensee acted in good faith and relied on their established practices
19   and procedures for batching, recording, or packeting debtor accounts,
20   and the licensee inadvertently initiates oral contact with the debtor
21   in an attempt to collect debts in the identified series subsequent to
22   the  initial  debt  assigned  to  the  licensee;  (ii)  the  licensee  is
23   following up on collection of a debt assigned to the licensee, and the
24   debtor  has  previously  requested  more  information  from  the  licensee
25   regarding the subject debt; (iii) the debtor has notified the licensee
26   that the debtor disputes only some, but not all the debts arising from
27   the  identified  series  of  dishonored  checks,  automated  clearinghouse
28   transactions on a demand deposit account, or other preprinted written
29   instruments, in which case the licensee shall be allowed to initiate
30   oral contact with the debtor one time for each debt arising from the
31   series of identified checks, automated clearinghouse transactions on a
32   demand deposit account, or written instruments and initiate additional
33   oral contact for those debts that the debtor acknowledges do not arise
34   from stolen or fraudulently created checks or written instruments; (iv)
35   the  oral  contact  is  in  the  context  of  a  judicial,  administrative,
36   arbitration, mediation, or similar proceeding; or (v) the oral contact
37   is made for the purpose of investigating, confirming, or authenticating
38   the  information  received  from  the  debtor,  to  provide  additional

1   information to the debtor, or to request additional information from
2   the debtor needed by the licensee to accurately record the debtor's
3   information in the licensee's records.

4       (25) Submit an affidavit or other request pursuant to chapter 6.32
5   RCW asking a superior or district court to transfer a bond posted by a
6   debtor subject to a money judgment to the licensee, when the debtor has
7   appeared as required.

8       **Sec. 3.**  RCW 19.16.260 and 2011 c 336 s 521 are each amended to
9   read as follows:
10      No collection agency or out-of-state collection agency may bring or
11  maintain an action in any court of this state involving the collection
12  of _its own claim or_ a claim of any third party without alleging and
13  proving that he, she, or it is duly licensed under this chapter and has
14  satisfied the bonding requirements hereof, if applicable:  PROVIDED,
15  That in any case where judgment is to be entered by default, it shall
16  not be necessary for the collection agency or out-of-state collection
17  agency to prove such matters.
18      A copy of the current collection agency license or out-of-state
19  collection agency license, certified by the director to be a true and
20  correct copy of the original, shall be prima facie evidence of the
21  licensing and bonding of such collection agency or out-of-state
22  collection agency as required by this chapter.

23      NEW SECTION.  **Sec. 4.**  Sections 1 and 3 of this act take effect
24  October 1, 2013.

        Passed by the House March 9, 2013.
        Passed by the Senate April 17, 2013.
        Approved by the Governor May 7, 2013.
        Filed in Office of Secretary of State May 7, 2013.

# EXHIBIT 7

# FINAL BILL REPORT
# SHB 2476

**C 30 L 20**
Synopsis as Enacted

**Brief Description**:  Concerning debt buyers.

**Sponsors**:  House Committee on Civil Rights & Judiciary (originally sponsored by Representatives Walen, Duerr, Kloba, Kilduff, Leavitt, Lekanoff, Orwall, Davis, Doglio, Frame, Macri, Goodman and Ormsby).

**House Committee on Civil Rights & Judiciary**
**Senate Committee on Law & Justice**

**Background**:

Collection agencies are regulated by the Collection Agency Act (CAA).  The CAA creates a licensing system, establishes a regulatory board, sets forth requirements and prohibited practices, and provides remedies.  The term collection agency is defined to encompass several categories of persons and entities, including any person or entity that is engaged in the business of purchasing delinquent or charged off claims for collection purposes, whether it collects the claims itself or hires a third party for collection or an attorney for litigation in order to collect such claims.

A claim is any obligation for the payment of money or thing of value arising out of any agreement or contract, express or implied.  This includes personal, household, family, and business debts.

No person or business may act as a collection agency without first acquiring a license from the Department of Licensing (DOL).  The DOL may deny, revoke, not renew, or suspend licenses for reasons related to conduct, financial circumstances, and noncompliance with the law.

The CAA sets forth a number of prohibited practices.  For example, collection agencies may not:
- contact a debtor with excessive frequency or at an unreasonable hour;
- publish an individual's debt or share the amount due with a third party; or
- misrepresent themselves when communicating with a debtor.

--------

*This analysis was prepared by non-partisan legislative staff for the use of legislative members in their deliberations. This analysis is not a part of the legislation nor does it constitute a statement of legislative intent.*

Violations of these prohibited practices are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce under the Consumer Protection Act. Individual debtors may file complaints with the regulatory board or with the Attorney General. Individuals may also bring civil suits against collection agencies for alleged violations of the CAA for injunctive relief and damages. If a prohibited act or practice is committed in the collection of a claim, the original claim or obligation may be recovered from the debtor, but neither the licensee, the customer of the licensee, nor any other person who may thereafter be legally entitled to collect is allowed to recover any interest, service charge, attorneys' fees, collection costs, delinquency charge, or any other fees or charges otherwise legally chargeable to the debtor on the claim.

**Summary**:

A new term, debt buyer, is specifically defined under the Collection Agency Act (CAA) to mean any person or entity that is engaged in the business of purchasing delinquent or charged off claims for collection purposes, whether it collects the claims itself or hires a third party for collection or an attorney for litigation in order to collect such claims. These persons and entities, now called debt buyers, continue to be one category or type of collection agency.

Provisions are added to the CAA that are specific only to debt buyers. No debt buyer may:
- bring any legal action against a debtor without attaching to the complaint a copy of the contract or other writing evidencing the original debt that contains the signature of the debtor. Specific provision is made for a claim based on a credit card debt for which a signed writing does not exist or on an electronic transaction for which a signed writing never existed;
- request a default judgment against a debtor in any legal action without providing to the court evidence establishing certain enumerated facts in a form that satisfies the requirements of the court rule and statute governing business records as evidence; or
- bring any legal action against a debtor without disclosing in the complaint: that the action is being brought by a debt buyer; the date the claim or obligation was purchased; the identity of the person or entity from whom or which the claim or obligation was purchased; that the plaintiff may have purchased the claim or obligation for less than the value stated in the complaint; if the claim or obligation was at any time sold without any representation or warranty of accuracy, a statement to that effect; and that the action is being commenced within, and is not barred by, an applicable statute of limitations.

Violations of these prohibited practices are unfair and deceptive practices or unfair methods of competition in the conduct of trade or commerce for purposes of the Consumer Protection Act. If one of these prohibited acts or practices is committed in the collection of a claim, the original claim or obligation may be recovered from the debtor, but neither the licensee, the customer of the licensee, nor any other person who may thereafter be legally entitled to collect is allowed to recover any interest, service charge, attorneys' fees, collection costs, delinquency charge, or any other fees or charges otherwise legally chargeable to the debtor on the claim.

These amendments to the CAA apply prospectively only and not retroactively.  They apply with respect to delinquent or charged off claims purchased for collection purposes by a debt buyer on or after the effective date.

**Votes on Final Passage:**

House    96   0
Senate   48   0

**Effective:**  June 11, 2020