UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD DWYER,

                Plaintiff,

    v.

TRINITY FINANCIAL SERVICES, LLC,

                Defendant.

Case No. C20-1236-JLR-SKV

REPORT AND RECOMMENDATION

       This matter comes before the Court on Defendant Trinity Financial Services, LLC's Motion to Dismiss, Dkt. 24. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary, and finds that Defendant's Motion, Dkt. 24, should be GRANTED IN PART and DENIED IN PART for the reasons explained herein.

I.      BACKGROUND

       Plaintiff owns a home located in Kent, Washington. Dkt. 1-1 ¶ 4. On July 11, 2006, Plaintiff took out two loans, each memorialized in a promissory note and secured by a deed of trust, with Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee and Ownit Mortgage Solutions, Inc. ("Ownit") as beneficiary under the deeds. *Id.* ¶ 5; Dkt. 24-1. The second position deed of trust ("Deed") was recorded on July 17, 2006, under King County

Recording Number 20060717000987. *Id.* Plaintiff has not made any payments on the promissory note ("Note") secured by the Deed since before December 31, 2006. *Id.* ¶ 6.

After Plaintiff executed the Deed, Ownit transferred its interest therein to Greystone Solutions, Inc. ("Greystone"), and Greystone subsequently notified Plaintiff that it now owned the Deed. Dkt. 1-1 ¶ 7. No recordings were filed with the King County Recorder's Office in connection with this transfer of ownership and MERS remained the Deed's legal beneficiary in the public records. *Id.*

On February 28, 2008, Plaintiff filed a Chapter 13 bankruptcy. Dkt. 1-1 ¶ 8. Plaintiff listed Greystone as a secured creditor in the bankruptcy proceeding and Greystone received notice of the bankruptcy. *Id.* ¶ 9. Greystone did not file a proof of claim or communicate with Plaintiff regarding the bankruptcy. *Id.* On January 30, 2009, the court dismissed the bankruptcy without plan confirmation. *Id.* ¶ 8.

On August 1, 2016, MERS assigned the Deed to Defendant. Dkt. 1-1 ¶ 17. Defendant recorded this assignment on August 24, 2016, under King County Recording Number 20160824001578. *Id.* Plaintiff alleges Defendant did not notify him of the assignment. *Id.*

Subsequently, the owner of the first position deed of trust initiated foreclosure proceedings against Plaintiff's property. Dkt. 1-1 ¶ 11. As a result, on April 27, 2017, Plaintiff filed a second Chapter 13 bankruptcy. *Id.* Plaintiff alleges that at the time of this filing, no one had communicated with him about the Deed since before his first bankruptcy filing in 2008. *Id.* ¶ 12. Plaintiff did not list Greystone or any other entity associated with the Deed as a secured creditor in the 2017 bankruptcy proceeding because he assumed the beneficiary under the Deed had "abandoned all hope of ever collecting anything[.]" *Id.* Plaintiff made payments through the

bankruptcy "in reliance upon no claim being asserted by any purported holder of the second position deed of trust." *Id.* ¶ 16.

On April 8, 2020, Defendant mailed a letter to Plaintiff ("2020 Letter") stating it had a valid security interest in Plaintiff's property that it could enforce through foreclosure. Dkt. 1-1 ¶ 23. The letter asked Plaintiff to complete a Mortgage Assistance Application that requested personal and financial information from Plaintiff. Dkt. 24-3 at 3–17. It also asked him to contact Defendant to negotiate payment arrangements. *Id.* at 1.

On August 3, 2020, Plaintiff initiated this lawsuit by serving Defendant with a Summons and Complaint that had not yet been filed in King County Superior Court. Dkt. 12 at 1. On August 18, 2020, Defendant removed Plaintiff's lawsuit to this Court. *See* Dkt. 1. Plaintiff brings claims against Defendant for violations of Washington's Consumer Protection Act ("CPA"), RCW 19.86 *et seq.*; Washington's Collection Agency Act ("CAA"), RCW 19.16 *et seq.*; Washington's Mortgage Loan Serving Act ("MLSA"), RCW 19.148 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617. Dkt. 1-1 ¶¶ 41–96, 105–23. Plaintiff also seeks to quiet title to his property against the Deed, alleging the statute of limitations for foreclosing the Deed has expired and that any foreclosure action by Defendant is barred by laches and waiver. *Id.* ¶¶ 97–104. Defendant now moves the Court to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. 24.

/ / /

/ / /

/ / /

## II.    DISCUSSION

### A.    Legal Standard

In considering a Rule 12(b)(6) motion,[1] the Court must determine whether the complaint alleges factual allegations stating a claim for relief that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  While detailed factual allegations are not necessary, a complaint must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555.  Dismissal is appropriate if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  In considering a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (cited source omitted).

When granting a motion to dismiss, the Court may dismiss claims with or without prejudice, and with or without leave to amend.  To the extent the Court dismisses Plaintiff's

---

[1] Defendant answered Plaintiff's Complaint. Dkt. 10.  Technically, a Rule 12(b)(6) motion cannot be filed after an answer is submitted. *See* Fed. R. Civ. P. 12(b).  But since Rule 12(h)(2)(B) provides that "[a] defense of failure to state a claim upon which relief can be granted" may be advanced in a motion for judgment on the pleadings under Rule 12(c), courts treat a 12(b)(6) motion filed after a defendant's answer as a 12(c) motion. *See U. S. for Use of E. E. Black Ltd. v. Price-McNemar Const. Co.*, 320 F.2d 663, 664 (9th Cir. 1963); *St. Paul Ramsey County Med. Ctr. v. Pennington County*, 857 F.2d 1185, 1187 (8th Cir. 1988).  This distinction is purely formal, however, because courts review such 12(c) motions under the standard governing 12(b)(6) motions. *St. Paul Ramsey County Med. Ctr.*, 857 F.2d at 1187 (8th Cir. 1988); *accord Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir.1987) (citing cases).

claims for failure to allege sufficient facts, Plaintiff has requested leave to amend his Complaint so that he may allege additional specific facts supporting his claims. Dkt. 26 at 1. "[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). Where the facts are not in dispute and the sole issue is whether there is liability as a matter of substantive law, the Court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

      B.    <u>Materials Considered</u>

As a general matter, the Court may not consider materials beyond the complaint in ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).[2] Exceptions to this rule include material properly submitted as a part of the complaint and documents not physically attached to the complaint if the contents are alleged in the complaint and no party questions the documents' authenticity. *Id*. In addition, under Federal Rule of Evidence 201, a court may take judicial notice of "'matters of public record.'" *Id*. at 688–89 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)). Specifically, a court may take judicial notice of a fact "not subject to reasonable dispute" because the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Defendant asks the Court to consider two letters from Defendant to Plaintiff when ruling on its Motion—the 2020 Letter and a letter dated August 13, 2015, ("2015 Letter"). Dkt. 24 at 6. Defendant also asks the Court to consider the Deed and the dockets and pleadings from

---

[2] Where matters outside the pleadings are presented and not excluded by the Court, the motion must be treated as one for summary judgment and disposed of under Rule 56. Fed. R. Civ. P. 12(d).

Plaintiff's bankruptcy cases. *Id.* Plaintiff does not object to consideration of the 2020 Letter or the Deed. These documents are referred to extensively in Plaintiff's Complaint and/or form the basis of his claims. That is, Plaintiff specifically alleges Defendant's mailing of the 2020 Letter violated the CAA, CPA, and FDCPA. Dkt. 1-1 ¶¶ 41–96. Further, Plaintiff references the Deed throughout his Complaint and his claims against Defendant are predicated on Defendant having a beneficial interest in the Deed. Given this, the Court agrees both the 2020 Letter and the Deed are properly considered here. *See United States v. Ritchie*, 342 F.3d 903, 907–09 (9th Cir. 2003).

Plaintiff also does not object to the Court's consideration of the dockets and pleadings from his bankruptcy cases. Matters of public record properly subject to judicial notice include "documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citing *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)). Courts may therefore consider pleadings, orders, and other court filings or records of administrative bodies when ruling on a Rule 12(b)(6) motion. *Del Puerto Water Dist. v. United States Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1233 (C.D. Cal. 2003) (citing *Mack*, 798 at 1282). But as reflected in the discussion below, the dockets and pleadings from Plaintiff's bankruptcy cases are not ultimately relevant to the Court's ruling and the Court declines to take judicial notice of them.

Plaintiff does object, however, to the Court's consideration of the 2015 Letter from Defendant to Plaintiff, which appears to have notified Plaintiff that servicing of the loan secured by the Deed was being transferred to Defendant. *See* Dkt. 24-2. Plaintiff questions the authenticity of this letter, arguing it is a recent fabrication, and notes that, because the letter is not referred to in his Complaint, it is not properly considered by the Court in ruling on Defendant's

Motion. Dkt. 26 at 4. Because Plaintiff does not allege the contents of the letter in his Complaint and questions the letter's authenticity, the Court declines to consider it here.

C.   Motion to Dismiss

1.   FDCPA Claims

Plaintiff's Complaint alleges Defendant violated numerous provisions of the FDCPA when sending Plaintiff the 2020 Letter. *See* Dkt. 1-1 ¶¶ 86–95. Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). As a threshold matter, the FDCPA applies only to "debt collectors" who engage in practices prohibited by the Act in an attempt to collect consumer "debts." *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576–77 (2010); *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1031 (9th Cir. 2009). Defendant moves to dismiss Plaintiff's FDCPA claims, arguing it cannot be liable under the Act because it is not a debt collector and was not attempting to collect a debt from Plaintiff when sending the 2020 Letter (the only conduct Defendant alleges it could be liable for within the Act's one year statute of limitations, 15 U.S.C. § 1692k(d)). Dkt. 24 at 11–12.

The FDCPA defines "debt collector" in two alternative ways: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" prong), or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another" (the "regularly collects" prong).[3] 15 U.S.C. § 1692a(6). Citing *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017), Defendant argues it must collect the debts of others to qualify as a debt collector under this definition. Dkt. 24 at 12. Because it was acting on behalf of itself when sending the 2020 Letter, Defendant argues it was not acting as a debt collector within the meaning of the statute. *Id.* Plaintiff argues Defendant is not the true owner of his debt, so was acting on behalf of another. Dkt. 26 at 15. Alternatively, Plaintiff argues that even if Defendant does not qualify as a "debt collector" under the "regularly collects" prong because it was not attempting to collect the debt of another, it does qualify as one under the "principal purpose" prong. *Id.* at 14–15.

In *Henson*, 137 S. Ct. at 1721, the U.S. Supreme Court clarified the meaning of "debt collector" under the "regularly collects" prong of the FDCPA's definition. In doing so, the Court found that the "plain terms" of the prong focus on "third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." *Id.* The Court further provided that the language does not appear to "care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase." *Id.* Rather, "[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" *Id.* at 1721–22. The Court therefore concluded that an entity that purchased debt originated by another company and then sought to collect that debt "for its own account" was not a "debt collector" under the "regularly collects" prong of the definition. *Id.* But *Henson* did not address who qualifies as a debt collector under the "principal purpose" prong of the definition—in fact, it explicitly declined to address this question. *Id.* at 1721.

---

[3] The Court notes that the FDCPA also defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests[,]" 15 U.S.C. § 1692a(6), but only for the limited purpose of § 1692f(6). Plaintiff does not address this provision in his opposition to Defendant's Motion.

Several U.S. Courts of Appeals have subsequently analyzed the issue. In *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267–68 (3d Cir. 2019), the Third Circuit found that the phrase "any business the principal purpose of which is the collection of any debts" sweeps broadly and includes a business that "buys consumer debt and hires debt collectors to collect on it." In *McAdory v. M.N.S. & Associates, LLC*, 952 F.3d 1089, 1094–95 (9th Cir. 2020), the Ninth Circuit agreed, finding the "principal purpose" prong provides a separate means of qualifying as a "debt collector" under the FDCPA by describing "the type of business Congress sought to regulate—i.e., one with a principal purpose of debt collection." Per the Court, the "relevant question" in assessing a business's principal purpose is "whether debt collection is incidental to the business's objectives or whether it is the business's dominant, or principal, objective." *Id.* at 1093. The Eighth Circuit has similarly concluded that an entity whose "primary objective is to collect on debt accounts it purchased in order to turn a profit" is a "debt collector" under the "principal purpose" prong of the FDCPA's definition. *Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1125 (8th Cir. 2020). This precedence indicates that unlike the "regularly collects" prong of the definition, an entity can qualify as a "debt collector" under the "principal purpose" prong by collecting debts for its <u>own accounts,</u> so long as the principal purpose of its business is debt collection.

Defendant cites *Niborg v. CitiMortgage, Inc.*, C17-5155-BHS, 2017 WL 3017633, at *2 (W.D. Wash. July 17, 2017), and *Kislyanka v. Clear Recon Corp.*, C19-0673-RSL, 2019 WL 4858795, at *4 (W.D. Wash. Oct. 2, 2019), in which this Court affirmed that an entity that seeks to collect a debt for its own account is not a "debt collector" under the FDCPA, to support its position that it could not have been acting as a "debt collector" when sending Plaintiff the 2020 Letter. Dkt. 24 at 12. But both cases were decided before *McAdory*, so are not determinative.

Defendant also cites *Barnes v. Routh Crabtree Olsen PC*, 963 F.3d 993, 997 (9th Cir. 2020), decided within months of *McAdory*, in which the Ninth Circuit explained a "debt collector" under the FDCPA "is a person who engages in 'the collection of a money debt' on behalf of a third party," and because the "debt must be owed or due 'another,' an entity that collects a debt owed itself—even a debt acquired after default—does not qualify under this definition." *Id.* While there is conflict between the Ninth Circuit's explanation of "debt collector" under the "principal purpose" prong in *McAdory* (i.e., as someone whose principal purpose is to collect debts, regardless of to whom those debts are owed) and its explanation of "debt collector" in *Barnes*, the Court finds this insufficient to overcome both the Ninth Circuit's own reasoning in *McAdory* and the text of the FDCPA itself, which plainly defines "debt collector" in two alternative ways. *See* 15 U.S.C. § 1692a(6). Moreover, *Barnes* dealt with whether enforcement of a security interest qualifies as "debt collection" under the FDCPA, not with whether an entity must collect the debt of another to qualify as a "debt collector" under the statute. *See Barnes*, 963 F.3d at 998–99. Indeed, *Barnes* did not even discuss the "principal purpose" prong of the FDCPA's definition of "debt collector," and the plaintiff in *Barnes* did not argue the defendant qualified as a debt collector under that prong.

Given this, the Court finds Defendant can qualify as a debt collector under the FDCPA not only by collecting debts owed another, but by collecting debts for its own accounts, so long as the principal purpose of its business is debt collection. Plaintiff's Complaint, however, does not allege Defendant was collecting the debt of another when sending the 2020 Letter or that the principal purpose of Defendant's business is debt collection. As a result, Plaintiff does not allege Defendant is a debt collector within the meaning of the FDCPA and fails to state a claim under the statute.

Plaintiff's Complaint likewise fails to state a claim under the FDCPA in failing to allege Defendant was actually attempting to collect a debt from Plaintiff. The FDCPA imposes liability only when an entity is attempting to collect a debt. *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2017) (citing 15 U.S.C. § 1692(e)). For purposes of the statute, the word "debt" is synonymous with "money." *Id.* (citing 15 U.S.C. § 1692a(5)). Thus, in order to be liable under the FDCPA, Defendant must have been trying to collect money from Plaintiff.[4]

Defendant argues the 2020 Letter, on which Plaintiff's FDCPA allegations rely, was not an attempt by Defendant to collect money from Plaintiff, and instead pursued "workouts of the secured debt" and warned of possible security instrument enforcement. Dkt. 24 at 12. Plaintiff argues the letter, which states "THIS IS AN ATTEMPT TO COLLECT A DEBT," proves Defendant was trying to collect a debt from Plaintiff. Dkt. 26 at 15.

The Ninth Circuit has held that actions taken to enforce a security instrument are not debt collection under the FDCPA when the collector does not seek to recover any debt beyond the proceeds from the sale of the security itself. *See Barnes*, 963 F.3d at 995–96; *Vien-Phuong Thi Ho*, 858 at 571–72. A loan servicer attempting to work out a loan in default by sending the borrower a letter informing the borrower of the default and explaining a variety of potential payment options is likewise not debt collection under the statute. *See Santoro v. CTC Foreclosure Serv. Corp.*, 12 Fed. App'x 476, 480 (9th Cir. 2001); *Lucero v. Cenlar FSB*, C13-0602-RSL, 2015 WL 519911, at *2 (W.D. Wash. Feb. 9, 2015).

Here, the 2020 Letter serves as the basis for Plaintiff's FDCPA claims. *See* Dkt. 1-1 ¶¶ 86–96. That letter informed Plaintiff that it was possible Defendant could not sue Plaintiff to collect what was owed under the Note, but that Defendant had a continuing and enforceable

---

[4] The parties do not discuss the liability of a "debt collector" who qualifies as such under § 1692a(6) for the limited purpose of § 1692f(6), and the Court does not address it.

security interest in Plaintiff's property which it might elect to enforce if Plaintiff failed to "make payments or explore loan modification or other options . . . ." Dkt. 24-3 at 2. The letter also offered to conduct an "individual assessment" for Plaintiff's file for a "possible loan modification or other accommodation to avoid foreclosure." *Id.* at 1. Thus, while the 2020 Letter informed Plaintiff that Defendant might enforce its security interest in Plaintiff's property, it also indicated that Defendant could not pursue collection of Plaintiff's debt beyond that enforcement. Further, while it stated, "THIS IS AN ATTEMPT TO COLLECT A DEBT," *id.* at 2, it did not demand payment of the debt, and instead offered to explore different payment options with Plaintiff. As such, the Court finds it does not qualify as an attempt to collect a debt under the FDCPA. *See Barnes*, 963 F.3d at 995–96; *Vien-Phuong Thi Ho*, 858 at 571–72; *Santoro*, 12 Fed. App'x at 480.

Because Plaintiff's Complaint fails to allege Defendant is a "debt collector" within the meaning of the FDCPA and the 2020 Letter does not qualify as an attempt to collect a debt, Plaintiff's FDCPA claims should be dismissed. However, because Plaintiff is capable of curing the allegations in his Complaint, dismissal should be without prejudice and with leave to amend.

2.    TILA Claims

Plaintiff's Complaint alleges Defendant violated TILA by failing to notify Plaintiff of the assignment of the Deed within the thirty-day window required by the statute and by failing to send Plaintiff monthly billing statements. Dkt. 1-1 ¶¶ 114–23.

Under TILA, "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party," the creditor that is the new owner or assignee of the debt must notify the borrower in writing of the transfer. 15 U.S.C. § 1641(g). Further, TILA requires a residential mortgage loan creditor, assignee, or servicer to "transmit to the

obligor, for each billing cycle, a statement" setting forth specific information, such as the amount of the principal obligation under the mortgage, the current interest rate in effect for the loan, and a description of any late payment fees, in a "conspicuous and prominent manner[.]" 15 U.S.C. § 1638(f)(1). The statute of limitations for bringing a claim under TILA is one year from the date of the alleged violation. 15 U.S.C. § 1640(e).

Defendant seemingly concedes it failed to notify Plaintiff of the Deed's assignment in accordance with TILA, but alleges Plaintiff's claim is barred by the statute of limitations because the assignment was publicly recorded in 2016, which provided Plaintiff with constructive notice of the assignment and commenced the running of the statute of limitations. Dkt. 24 at 15. Plaintiff argues violations of this provision of TILA are subject to the discovery rule, Dkt. 26 at 20, which provides that "'a cause of action accrues when the plaintiff, through the exercise of due diligence, knew or should have known the basis for the cause of action.'" *Pearse v. First Horizon Home Loan Corp.*, C16-5627-BHS, 2016 WL 5933518, at *3 (W.D. Wash. Oct. 12, 2016) (quoting *Shepard v. Holmes*, 185 Wn. App. 730, 739 (2014)), *aff'd*, 742 Fed. Appx. 167 (9th Cir. 2018).

Per Plaintiff's Complaint, the Deed was assigned to Defendant in August 2016 and the assignment was publicly recorded the same month. Dkt. 1-1 ¶ 17. These allegations, taken as true, mean Defendant's failure to notify Plaintiff of the assignment occurred five years ago and four years after the expiration of the statute of limitations for a challenge under TILA. Even assuming the discovery rule applies, through the exercise of due diligence, Plaintiff should have known the Deed had been transferred to Defendant when the transfer was recorded in 2016. *See Pearse*, 2016 WL 5933518, at *3 ("Moreover, to the extent Plaintiff claims that he was injured by MERS assigning its rights under the Deed of Trust, the public recording of those assignments

similarly placed him on notice.").  Plaintiff argues "such a 'constructive notice' requirement would totally vitiate" the relevant TILA provision, Dkt. 26 at 20, but cites no authority to support this position.  Further, while he argues *Pearse* "has absolutely nothing to do" with TILA, *Pearse* properly articulates the discovery rule standard, and provides that the public recording of a deed's assignment constructively notifies the debtor of the assignment and commences the statute of limitations for bringing a claim predicated thereon.  *Pearse*, 2016 WL 5933518, at *3. Given this, the statute of limitations for Plaintiff's claim alleging Defendant failed to notify him of the Deed assignment in accordance with TILA has expired, and the claim should be dismissed with prejudice and without leave to amend.

Defendant argues Plaintiff's claim alleging Defendant failed to provide him with monthly billing statements in accordance with TILA should also be dismissed because (1) Defendant was "not enforcing payments in the year prior to case filing," so was not required to issue billing statements, and (2) TILA requires proof of actual damages and Plaintiff was not damaged by Defendant's conduct.  Dkt. 24 at 14–15.  Plaintiff argues TILA required Defendant to send billing statements regardless of whether it was enforcing payments and that he is entitled to statutory damages.  Dkt. 26 at 18–19.  The Court agrees that TILA, by its terms, does not limit a loan servicer's or assignee's obligation to send billing statements to periods when they are enforcing payments, *see* 15 U.S.C. § 1638(f)(1), and Defendant's perfunctory assertions to the contrary do not support this proposition.  But because statutory damages are not available for violations of the relevant TILA provision—15 U.S.C. § 1638(f)(1)—and Plaintiff does not plead actual damages resulting from Defendant's failure to issue billing statements, the Court finds Plaintiff's claim fails to state a claim for relief.

TILA contemplates statutory damages for violations of certain of its provisions; however, it explicitly enumerates a "closed list" of § 1638 "disclosure rules" for which statutory damages are available. *See In re Ferrell*, 539 F.3d 1186, 1191 (9th Cir. 2008) (citing 15 U.S.C. § 1640(a)). This "closed list" is limited to violations of certain provisions of § 1638(a), (b), and (e). *See* 15 U.S.C. § 1640(a)(4). Section 1638(f)(1), on which Plaintiff's claim relies, is not included in this list, meaning Plaintiff cannot state a claim under the section by alleging statutory damages, *In re Ferrell*, 539 F.3d at 1191, and instead must plead actual damages. *See* 15 U.S.C. § 1640(a)(1).

Plaintiff's Complaint alleges he is "entitled to recover actual damages from Defendant" for its violation of § 1638(f)(1), Dkt. 1-1 ¶ 122, but fails to articulate what actual damages he has suffered. Plaintiff's claim under § 1638(f)(1) should therefore be dismissed without prejudice and with leave to amend to permit Plaintiff to plead actual damages resulting from Defendant's alleged violation of the statute.

3.    RESPA Claim

Plaintiff's Complaint alleges Defendant violated RESPA by failing to notify Plaintiff that servicing of the loan secured by the Deed had been transferred to Defendant in accordance with the statute's requirements. Dkt. 1-1 ¶¶ 105–109. RESPA requires the servicer of a "federally related mortgage loan" to "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person . . . not less than 15 days before the effective date of transfer" and not more than "30 days after the effective date," under certain circumstances. 12 U.S.C. § 2605(b). In his Complaint, Plaintiff contends Defendant failed to comply with this requirement because while "[s]ervicing of the second position deed of trust was transferred to

Defendant on August 1, 2016," Defendant did not notify Plaintiff of the transfer until it sent the 2020 Letter. Dkt. 1-1 ¶ 106.

Defendant moves to dismiss Plaintiff's RESPA claim, arguing the 2015 Letter notified Plaintiff of the transfer. Dkt. 24 at 14. The Court has determined, however, it will not consider this letter because Plaintiff's Complaint does not reference or rely on it and Plaintiff disputes its authenticity.[5] *See Lee*, 250 F.3d at 688. Defendant does not otherwise challenge the sufficiency of Plaintiff's RESPA claim. Accordingly, Defendant's Motion as to Plaintiff's RESPA claim should be denied.

### 4. Quiet Title Claims

Plaintiff brings a claim to quiet title to his property against the Deed, alleging any attempt by Defendant to foreclose the Deed is barred by the statute of limitations and laches, and because Defendant has waived its right to foreclosure. Dkt. 1-1 at 97–104. Defendant moves to dismiss Plaintiff's quiet title claim on all three grounds. Dkt. 24 at 7–11.

#### a. *Expiration of Statute of Limitations*

Under RCW 7.28.300, an owner of real property can quiet title to the property if the statute of limitations has expired for an action on the deed of trust. The statute of limitations for actions on deeds of trust is six years. *See* RCW 4.16.040(1); *Westar Funding, Inc. v. Sorrels*, 157 Wn. App. 777, 784, 239 P.3d 1109 (2010). Plaintiff's Complaint alleges he last made a payment on the Note in 2006, "far longer than six years" ago, meaning any attempt by Defendant to bring an action on the Deed is time-barred. Dkt. 1-1 ¶ 98. Defendant argues Plaintiff's quiet title claim should be dismissed because the Note has not yet matured, meaning the statute of limitations for an action on the Deed has not started running. Dkt. 24 at 7.

---

[5] The Court also notes that while Defendant does not dispute that the transfer occurred in August 2016, the 2015 Letter is dated August 13, 2015—a full year before the transfer took place.

1    The six-year statute of limitations on a deed of trust accrues when the party is entitled to

2    enforce the obligations of the promissory note secured by the deed. *Cedar W. Owners Ass'n v.*

3    *Nationstar Mortgage, LLC*, 7 Wn. App. 2d 473, 483, 434 P.3d 554, *review denied*, 193 Wn.2d

4    1016, 441 P.3d 1200 (2019). When a promissory note is paid in installments, the six-year statute

5    of limitations runs against each individual installment when it is due. *4518 S. 256th, LLC v.*

6    *Karen L. Gibbon, PS*, 195 Wn. App. 423, 434, 382 P.3d 1 (2016). "The last payment owed

7    commences the final six-year period to enforce a deed of trust securing a loan. This situation

8    occurs when the final payment becomes due, such as when the note matures or a lender

9    unequivocally accelerates the note's maturation." *Hankins v. US PROF-2014-S2 Legal Title Tr.*,

10   C17-5142-RBL, 2017 WL 1884851, at *2–3 (W.D. Wash. May 9, 2017) (citing *4518 S. 256th,*

11   *LLC*, 195 Wn. App. at 434–35); *see also Westar Funding, Inc.*, 157 Wn. App. at 784.

12           The Note is an installment note which does not mature until August 1, 2036. Dkt. 24-1 at

13   2. Given this, the holder of the Note must have unequivocally accelerated the Note's maturation

14   at least six years prior to Plaintiff bringing this action in order for the statute of limitations to

15   have run on an action against the Deed. Plaintiff's Complaint does not allege the Note's holder

16   accelerated the Note. As such, it fails to state a quiet title claim against the Deed based on the

17   expiration of the statute of limitations. While Plaintiff argues the statute of limitations has run

18   on "all monthly installments that were due more than six years ago[,]" this does not change the

19   fact Plaintiff cannot quiet title to his property until the statute of limitations has run on all

20   payments due under the Note. Plaintiff's claim should therefore be dismissed without prejudice

21   and with leave to amend to permit Plaintiff to plead facts sufficient to find that the holder of the

22   Note accelerated it at least six years before Plaintiff filed this action.

23           / / /

*b.     Laches*

Laches is an equitable defense based on estoppel.  *Real Progress, Inc. v. City of Seattle*,

91 Wn. App. 833, 843–44, 963 P.2d 890 (1998).  The doctrine applies when a defendant

affirmatively establishes "(1) knowledge by plaintiff of facts constituting a cause of action or a

reasonable opportunity to discover such facts; (2) unreasonable delay by plaintiff in commencing

an action; and (3) damage to defendant resulting from the delay in bringing the action."

*Davidson v. State*, 116 Wn.2d 13, 25, 802 P.2d 1374 (1991).  "To constitute laches there must

not only be a delay in the assertion of a claim but also some change of condition must have

occurred which would make it inequitable to enforce it."  *Waldrip v. Olympia Oyster Co.*, 40

Wn.2d 469, 477, 244 P.2d 273 (1952).

Plaintiff's Complaint seeks to quiet title against the Deed based on the doctrine of laches,

alleging Defendant and its predecessors in interest (1) have known about their rights under the

Deed since July 20[0]6; (2) knew Plaintiff stopped making payments toward the Note in August

or September 2006; (3) unreasonably delayed in bringing an action to enforce the Deed; and (4)

Plaintiff would be damaged if Defendant were now allowed to do so.  Dkt. 1-1 ¶ 100.

Defendant argues Plaintiff's laches quiet title claim should be dismissed because laches is

a defense and there is "no pending enforcement of the lien that would trigger a defense."  Dkt. 24

at 8.  Defendant further argues Washington's quiet title statute only permits a party to quiet title

against a deed of trust when "enforcement is barred by the statute of limitations," and does not

contemplate a party doing so on the basis of laches.  *Id.* at 8–9.  Plaintiff opposes dismissal,

arguing that, regardless of the quiet title provisions specific to deeds of trust in Washington's

quiet title statute, any party with an interest in real property and a right to possession thereof can

quiet title in accordance with Washington's general quiet title provision, RCW 7.28.010.  Dkt. 26

at 10.  Further, because quiet title is an action developed in equity, Plaintiff contends he can use an equitable theory, like laches, to accomplish it.  *Id.*  Finally, he argues because the facts supporting laches exist now, it would be "absurd" to make him wait for Defendant to actually threaten foreclosure before allowing him to assert the defense of laches.  *Id.*

Even assuming a party is not restricted to quieting title against a deed based solely on the expiration of the statute of limitations, Plaintiff improperly employs laches to quiet title here. Laches is an equitable <u>defense</u> properly invoked as a shield, and not a sword.  *See King Cty. v. Taxpayers of King Cty.*, 133 Wn.2d 584, 642, 949 P.2d 1260 (1997) (dissent).  Plaintiff attempts to use the doctrine as a sword to obtain affirmative relief against Defendant, but cites no authority to support his ability to do so.  Moreover, "absent highly unusual circumstances," a court is precluded from imposing a shorter period in which a party must assert a claim under the doctrine of laches than that imposed by the relevant statute of limitations.  *Brost v. L.A.N.D., Inc.*, 37 Wn. App. 372, 375, 680 P.2d 453 (1984) (citing *Auve v. Wenzlaff*, 162 Wash. 368, 374, 298 P. 686 (1931)).  The statute of limitations for bringing an action on the Deed has not yet passed, meaning Defendant is not time-barred from bringing a foreclosure claim, and Plaintiff has not pleaded highly unusual circumstances that would justify permitting him to circumvent Defendant's ability to do so by quieting title under a laches theory.

Finally, the Deed provides that any delay by Defendant in taking prompt action under it will not result in Defendant losing its right of action.  Dkt. 24-1 at 4.  Courts enforce contracts as written by the parties.  *In re Estate of Bachmeier*, 147 Wn.2d 60, 68, 52 P.3d 22 (2002).  By contracting to this provision, Plaintiff effectively waived his ability to argue that laches precludes Defendant from bringing a foreclosure action.  *See Adair Homes, Inc. v. Butler*, No. 40525–3–II,

2011 WL 2462842, *5 (Wash. Ct. App. June 14, 2011).  Plaintiff's claim to quiet title based on laches should therefore be dismissed with prejudice and without leave to amend.

### c.    Waiver

Waiver is the "intentional and voluntary relinquishment of a known right."  *Jones v. Best*, 134 Wn.2d 232, 241, 950 P.2d 1 (1998).  Plaintiff brings a claim to quiet title against the Deed on waiver grounds, alleging that while Defendant and its predecessors in interest have known about their rights under both the Deed and Note since July 2006, they failed to enforce those rights or assert any interest in either.  Dkt. 1-1 at ¶ 102.

As with Plaintiff's laches quiet title claim, the waiver quiet title claim should be dismissed with prejudice and without leave to amend because Plaintiff contracted to permit Defendant to delay in exercising its rights and remedies under the Deed without waiving those rights and remedies.  Dkt. 24-1 at 4.  Plaintiff cites no authority to refute the applicability of this contractual provision to the circumstances here, nor does he challenge the provision's meaning.[6]

### 5.    CAA Claims

The CAA imposes affirmative obligations on collection agencies operating in Washington and prohibits them from engaging in certain practices.  *See generally* RCW 19.16 *et seq*.  Plaintiff's Complaint alleges Defendant violated numerous provisions of the CAA by making misrepresentations in the 2020 Letter and by failing to provide Plaintiff with information required under the statute.  Dkt. 1-1 ¶¶ 45–49.  Defendant moves to dismiss Plaintiff's CAA claims on the ground that it does not qualify as a "collection agency" under the CAA.  Dkt. 24 at 12–13.

---

[6] In response to Defendant's arguments that waiver is a defense and Washington's quiet title statute does not permit a party to quiet title on waiver grounds, Plaintiff simply again contends that he can quiet title using Washington's general quiet title statutory provision and that his waiver claim is "ripe," regardless of whether waiver is typically a defense.  Dkt. 26 at 12–13.

The CAA defines a "collection agency," in part, as "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person." RCW 19.16.100(4)(a). According to Defendant, because it owns Plaintiff's debt, it was not attempting to collect a debt due to another person when mailing the 2020 Letter, so cannot be liable under the CAA. Dkt. 24 at 12–13. The CAA, however, also defines a "collection agency" as a "debt buyer." RCW 19.16.100(4)(d). A "debt buyer," in turn, means "any person or entity that is engaged in the business of purchasing delinquent or charged off claims for collection purposes, whether it collects the claims itself or hires a third party for collection or an attorney for litigation in order to collect such claims." RCW 19.16.100(7). Defendant argues it does not qualify as a "collection agency" under this definition because it did not purchase Plaintiff's debt for collection purposes. This constitutes a question of fact not properly resolved on a motion to dismiss. *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 212 (9th Cir. 1957). Plaintiff's Complaint alleges Defendant is a collection agency, Dkt. 1-1 ¶ 42, incorporates the definition of "debt buyer," *id.* ¶ 19, and provides that Defendant has purchased numerous delinquent deeds of trust in Washington, *id.* ¶ 20. This sufficiently alleges Defendant is a "collection agency" for the purposes of the Act.

Defendant further argues that the CAA only applies "with respect to delinquent or charged off claims purchased for collection purposes by a debt buyer on or after June 11, 2020." Dkt. 24 at 13. Because Defendant acquired Plaintiff's debt in 2016, it contends it cannot be liable under the statute. *Id.* While it is true the CAA was amended in 2020 and those amendments only apply to debt purchased after June 11, 2020, the Act's other protections, on which Plaintiff's claims rely, were in place prior to that time. *See* 2020 Wash. Legis. Serv. Ch. 30 (S.H.B. 2476) (West) (detailing 2020 amendments to the CAA and demonstrating that the

provisions on which Plaintiff relies were in place prior to the Act's amendment). Defendant's argument is without merit.

Finally, Defendant argues it is exempt from the CAA's provisions as a finance and loan servicing company that "purchases and services performing and non-performing secured loans, in addition to purchasing real estate." Dkt. 24 at 13–14. It is true the CAA exempts "loan or finance companies" from the definition of "collection agency" under certain circumstances; however, this exemption only applies when the collection activities in question are carried out in relation to the "operation of a business other than that of a collection agency[.]" RCW 19.16.100(5)(c). To the extent the conduct is carried out for collection purposes, the exception does not apply. *See id.* Defendant argues a collection agency's "principal business is collection" and there is no record of it actually collecting any debts in Washington. Dkt. 24 at 14. But, again, such claims pose questions of fact not properly resolved on a motion to dismiss. *Rennie & Laughlin, Inc.*, 242 F.2d at 212. By pleading Defendant is a collection agency that has purchased delinquent deeds of trust in Washington, Plaintiff's Complaint sufficiently alleges Defendant is a collection agency under the CAA. Because Defendant does not otherwise challenge the sufficiency of Plaintiff's CAA claims, Defendant's Motion should be denied.

### 6. CPA Claims

Plaintiff brings (1) a per se CPA claim against Defendant for its alleged violations of the CAA, Dkt. 1-1 ¶¶ 41–65, and (2) a CPA claim predicated on Defendant's alleged violations of RESPA, TILA, and the MLSA; Defendant's misrepresentation that it could lawfully foreclose on the Deed and/or institute other legal proceedings against Plaintiff; and Defendant's attempt to obtain personal and financial information from Plaintiff via the Mortgage Assistance Application in the 2020 Letter. *Id.* ¶¶ 66–85.

The CPA declares "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. RCW 19.86.020. To state a claim under the CPA, a plaintiff must allege (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) injury to the plaintiff's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Defendant moves to dismiss Plaintiff's CPA claims, alleging it has not committed an unfair or deceptive act or practice and that Plaintiff has not suffered any damages as a result of Defendant's conduct. Dkt. 24 at 16.

A plaintiff may demonstrate the existence of an unfair or deceptive act or practice by showing either that the conduct complained of has the capacity to deceive a substantial portion of the public or by a showing it constitutes a per se unfair trade practice. *Id.* at 785–86. A per se unfair trade practice is an act or practice that the legislature has declared unfair or deceptive in trade or commerce. *Id.* at 786. Here, Plaintiff alleges Defendant violated CAA provisions RCW 19.16.110 and 19.16.250 by representing it had the ability to foreclose on the Deed when it lacked the requisite license for doing so and by failing to provide Plaintiff with information it was required to provide under the CAA. Dkt. 1-1 ¶¶ 45–49. The CAA declares violations of either provision to be an "unfair act[] or practice[] or unfair method[] of competition in the conduct of trade or commerce for the purpose of the application of the consumer protection act[.]" RCW 19.16.440. In other words, violating either provision constitutes a per se violation of the CPA. While Defendant challenges Plaintiff's CAA claims on the ground that it is not a collection agency, it does not otherwise challenge their legal sufficiency, and the Court finds Plaintiff's Complaint states a claim under the CAA. Given this, Plaintiff sufficiently alleges

Defendant has committed a per se unfair or deceptive act or practice by alleging violations of RCW 19.16.110 and RCW 19.16.250.

Plaintiff further alleges Defendant committed unfair or deceptive acts or practices by (1) failing to notify Plaintiff that it was servicing the loan secured by the Deed in accordance with RESPA;[7] (2) failing to notify Plaintiff of the Deed assignment and failing to provide him with periodic billing statements in accordance with TILA; (3) falsely representing that it could institute foreclosure and/or other legal proceedings against Plaintiff when it was not authorized to do so and when Plaintiff was entitled to quiet title against the Deed; and (4) attempting to obtain Plaintiff's confidential personal and financial information. Dkt. 1-1 ¶¶ 68–72. In challenging the sufficiency of these claims, Defendant argues it did not commit any unfair or deceptive acts or practices, ostensibly because it was standing by its contract rights. *See* Dkt. 24 at 16 (citing *Batson v. Deutsche Bank Tr. Americas*, No. C15-0193-SAB, 2017 WL 3754827, at *6–7 (E.D. Wash. Aug. 30, 2017)). The Court finds Plaintiff contracted to permit Defendant to delay in bringing an enforcement action under the Deed and therefore agrees Plaintiff's quiet title claims on the basis of laches and waiver do not allege unfair or deceptive acts or practices by Defendant. However, Defendant's conclusory challenge to the remainder of Plaintiff's CPA claims is insufficient to demonstrate a failure to state a claim for relief. As a result, the Court finds Plaintiff's claims sufficiently allege Defendant engaged in unfair or deceptive acts or practices in violation of the CPA. Whether Plaintiff's CPA claims predicated on Defendant's alleged violations of other statutes, such as TILA or the FDCPA, state a claim under the CPA

---

[7] Plaintiff also alleges Defendant violated the CPA by failing to comply with the MLSA's notice provisions. Dkt. 1-1 ¶ 68. Because Plaintiff concedes Defendant was not required to comply with the MLSA relative to Plaintiff's loan, any alleged violations of the MLSA cannot support a violation of the CPA.

when they do not do so under those statutes (i.e., because the claims are time-barred, lack proof of the requisite damages, etc.) may be briefed by later motion.

Finally, Defendant argues Plaintiff's CPA claims should be dismissed because Plaintiff "clearly has not suffered property or business damages," as Defendant has permitted Plaintiff to "forego payments on the secured debt during his extended period of financial hardship, which has been to his benefit." Dkt. 24 at 16. The CPA requires a plaintiff to prove injury to business or property. *Hangman Ridge Training Stables, Inc.*, 105 Wn.2d at 792. The injury element is met upon proof that the plaintiff's "property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990). "Injury" is distinct from "damages." *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740, 733 P.2d 208 (1987). Monetary damages need not be proved and nonquantifiable injuries, such as loss of goodwill, satisfy the CPA's injury element. *Id.* A plaintiff needing to consult an attorney to dispel uncertainty regarding the nature of an alleged debt also satisfies the injury element. *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 62, 204 P.3d 885 (2009). To establish both injury and causation under the CPA, "it is not necessary to prove one was actually deceived." *Id.* at 63. Instead, it is sufficient to establish the deceptive act or practice "proximately caused injury to the plaintiff's 'business or property.'" *Id.* at 63–64.

Plaintiff argues he sufficiently alleges injury under the CPA by alleging (1) he had to consult with an attorney to dispel uncertainty regarding the nature of his debt; (2) he paid nearly $56,000 in connection with his 2017 bankruptcy that he otherwise would not have paid had Defendant not concealed the existence of its loan; and (3) pecuniary loss totaling $25,000 due to "loss of current opportunities to sell property." Dkt. 26 at 23–24. However, Plaintiff pleads only

the amount he paid in connection with his 2017 bankruptcy. While this type of loss is arguably

sufficient to allege injury under the CPA, the Complaint does not explicitly tether this injury to

Defendant's alleged CPA violations. That being said, the Complaint does provide that, "[a]s a

direct and proximate result of Defendant's unfair acts and practices, Plaintiff suffered injury in

fact and lost money." Dkt. 1-1 at ¶¶ 57, 78. Although a close call, taken in the light most

favorable to Plaintiff, the Court finds these allegations, read together, sufficiently allege

Defendant's unfair or deceptive acts or practices were a proximate cause of Plaintiff's decision to

make payments in connection with the 2017 bankruptcy that he otherwise would not have made.

Accordingly, Defendant's Motion as to Plaintiff's CPA claims, save any claims

predicated on laches or waiver, should be denied. Alternatively, if the Motion is granted,

Plaintiff should be allowed leave to amend his Complaint to better articulate his alleged injury

under the CPA.

### 7.   MLSA Claim

Plaintiff's Complaint alleges Defendant violated the MLSA by failing to notify Plaintiff

that servicing of the loan secured by the Deed had been transferred to Defendant within thirty

days of the transfer. Dkt. 1-1 ¶ 110 (citing RCW 19.148.030(2)). Defendant moves to dismiss

this claim, alleging the MLSA only "applies to purchase-money residential loans," and its loan is

not a purchase-money residential loan. Dkt. 24 at 14. Plaintiff concedes as much and withdraws

his MLSA claim. Accordingly, the claim should also be dismissed with prejudice and without

leave to amend.

### D.   Defendant's Entitlement to Fees

Section 1692k(a)(3) of the FDCPA provides that, "[o]n a finding by the court that an

action under this section was brought in bad faith and for the purpose of harassment, the court

may award to the defendant attorney's fees reasonable in relation to the work expended and costs." Defendant argues Plaintiff brought claims under the FDCPA "to harass and intimidate and try to extract an immediate monetary payout" from Defendant and contends it is entitled to its attorney fees under the section. Dkt. 24 at 17. Defendant likewise argues it is entitled to fees pursuant to paragraphs 7 and 17 of the Deed. *Id.*

Defendant cites no authority to support its position that Plaintiff acted in bad faith or for the purpose of harassment when alleging violations of the FDCPA and the Court finds Defendant's Motion insufficiently articulates entitlement to fees under the statute. Its Motion to recover fees under the FDCPA should therefore be denied.

Defendant's Motion to recover fees under paragraphs 7 and 17 of the Deed should also be denied. Paragraph 17 only entitles Defendant to recover fees if Defendant pursues specific remedies enumerated in the paragraph following Plaintiff's default, such as acceleration and foreclosure. Dkt. 24-1 at 5–6. Defendant has not demonstrated or even alleged it has sought any of the enumerated remedies, meaning it is not entitled to fees under this paragraph. Paragraph 7 provides that "if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender . . . upon notice to Borrower, may . . . disburse such sums, including reasonably attorneys' fees[.]" *Id.* at 4. Plaintiff's action to quiet title arguably affects Defendant's security interest in Plaintiff's property; however, because the Court recommends permitting Plaintiff leave to amend his quiet title claim based on the statute of limitations, Defendant's Motion to recover fees under this paragraph is premature and should be denied.

### III.     CONCLUSION

The Court finds Plaintiff's RESPA, CAA, and CPA claims are not subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, and

Defendant's Motion should be DENIED relative to those claims. Plaintiff's FDCPA, TILA, quiet title, and MLSA claims are, however, subject to dismissal under Rule 12(b)(6) and Defendant's Motion should be GRANTED in relation to those claims. Plaintiff should be granted leave to amend his FDCPA, § 1638(f)(1) TILA, and RCW 7.28.300 quiet title claims, but Plaintiff's § 1641(g) TILA and MLSA claims, as well as his quiet title claims based on laches and waiver, should be dismissed with prejudice, as should any CPA claims predicated on laches or waiver. A proposed order of dismissal accompanies this Report and Recommendation.

## IV.    OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 20, 2021**.

Dated this 6th day of August, 2021.

S. KATE VAUGHAN
United States Magistrate Judge